PEOPLE v STRAIGHT

Docket Nos. 76317, 76318. Argued June 2, 1987 (Calendar No. 5). Decided June 1, 1988.

William J. Straight was convicted by a jury in the Kent Circuit Court, Robert A. Benson, J., of second-degree criminal sexual conduct involving a four-year-old girl. The Court of Appeals, MacKenzie, P.J., and Maher and Chrzanowski, JJ., affirmed in an unpublished opinion per curiam (Docket Nos. 74421, 76254). The defendant appeals, and the people cross appeal, the question whether the trial court committed error requiring reversal in permitting the parents of the victim to testify under the excited utterance exception to the hearsay rule, regarding statements made by the victim one month after the alleged assault.

In an opinion by Justice Boyle, joined by Chief Justice Riley and Justices Brickley, Cavanagh, and Griffin, the Supreme Court *held:*

The statements of the child in this case were not admissible as excited utterances under MRE 803(2). Nor could it be concluded that the evidence was merely corroborative in light of its substantive use by the prosecution. Admission of the testimony for substantive use was error.

1. To be admitted as an excited utterance, a statement must be made while the declarant is under excitement caused by a startling event, and it must relate to the circumstances of the startling event. The focus of MRE 803(2), given a startling event, is whether the declarant spoke while still under the stress caused by the event. It is the lack of capacity to fabricate, rather than the lack of time to fabricate, which justifies the rule.

2. While a sexual assault is a startling event, in this case, the statements at issue were made approximately one month after the alleged assault, immediately after a medical examination of

REFERENCES

Am Jur 2d, Evidence §§ 493-497, 1094.

When is hearsay statement an "excited utterance" admissible under Rule 803(2) of the Federal Rules of Evidence. 48 ALR Fed 451.

the child's pelvic area and repeated questioning by the child's parents. Although the child was under stress, it cannot be concluded that the stress resulted from the alleged assault rather than from a combination of the examination and the questioning. In addition, the testimony by the parents regarding the child's statements was not offered merely to corroborate the child's testimony, but for its substantive worth. Its admission substantially prejudiced the defendant, requiring reversal and remand for a new trial.

3. Application of the Rules of Evidence to child witnesses in cases of sexual abuse has created tension in the trial courts and the Court of Appeals as a result of the conflict between the underlying policies to protect children from exploitation and accused persons from erroneous convictions and their consequences. Increasingly, the courts have resorted to the excited utterance exception to admit statements of young children. However, the problems inherent in sex offense cases involving young children cannot be resolved by stretching the excited utterance exception so far as to abuse its intended purpose. Because the existing Rules of Evidence and procedure may not adequately deal with such cases, publication of a proposed rule for comment is appropriate.

Justices LEVIN and ARCHER concurred, except with respect to part IV of the opinion.

Reversed and remanded for a new trial.

EVIDENCE — HEARSAY — EXCITED UTTERANCE.

In determining whether a statement by a declarant was an excited utterance, the proper focus is whether the declarant spoke while still under stress caused by a startling event; it is the lack of capacity to fabricate, rather than the lack of time to fabricate, which justifies the determination (MRE 803[2]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, and *Timothy K. McMorrow,* Chief Appellate Attorney, for the people.

*James R. Rinck* for the defendant.

BOYLE, J. We are asked in this appeal from defendant's conviction of criminal sexual conduct to decide whether a child's statements, made approximately one month after the event, as related

by her parents, were properly admitted as substantive evidence under MRE 803(2)—the excited utterance exception to the hearsay rule. The statements concerned the details of the assault and the identity of her attacker.

We hold that these statements were not admissible as excited utterances under MRE 803(2). Further, in light of the substantive use of this evidence by the prosecuting attorney, it cannot be concluded that this evidence was merely corroborative. Admitting this testimony for substantive use was error. Consequently, we reverse the decision of the Court of Appeals and remand this case to the trial court for a new trial.

I

William Straight was charged with first-degree criminal sexual conduct. The victim was four years old at the time of the alleged assault. The jury's verdict and the defendant's conviction of second-degree criminal sexual conduct were affirmed by the Court of Appeals.

The alleged assault took place in early October, 1982, when the victim's mother went to the bank late one night with the defendant's wife. The mother had asked defendant, her next-door neighbor, to look in on her children during the few minutes that she expected to be away. She actually was gone for quite some time. When she arrived home, she found defendant sitting on the floor of her dining room with his legs extended and his arms around the child, who was crying. The mother asked defendant what he was doing, and why the child was out of bed. He responded that when he had looked in on the children he had found the child crying at the top of the stairs and that he had been comforting her when the mother returned.

At trial, the mother testified that during the next three to four weeks the child had recurring nightmares and a poor appetite, experienced vomiting, and was irritable. One evening when the child vomited, approximately one month after the mother had found defendant holding the child, the mother and the child's father took the child to a hospital where the conversation admitted as an excited utterance occurred.

The child was examined at the hospital where no physical evidence of molestation was found. When the parents and child were alone, they began questioning her about defendant. Both the mother and the child's father testified about the conversation.[1] The victim, then five years old, also testified.

---

[1] The mother testified before the child testified:

> *Q.* Okay. Was her dad there in the room with you?
> *A.* He was there the whole time.
> *Q.* Could you tell us how this developed, who said what and when?
> *A.* First I started in on her about, "[R _____ (the child)], what is wrong with you? Why do you keep throwing up? Why do you keep waking up and shaking. Tell me what is wrong with you."
> So she just, you know, kept on looking up at me really scared and she wouldn't say anything and I just looked over at [her father] and I said, "[G _____], you've got to do something with her. I can't find out what's wrong with her." And so he looked at her and said, "[R_____], tell us what happened right now." And that is when she come out and said something and I said, "Did Bill do anything to you?", and she said yes—do you want me to go ahead and say it?
> *Q.* That is right. We are all adults here, we want to hear it.
> *A.* She said, "Yes, Bill put his fingers inside me," and I said, "What else did he do?", and she said, "he told [T _____ (another child)], to go get a fork so that he could eat me." And [T _____] was downstairs when I came home that night so she said that [T _____] went and got a fork out of the cupboard so that he could eat [R _____].
> *Q.* Okay. Is that basically what she told you in front of your husband?
> *A.* Yes.

The father testified after the mother and the child had testified:

II

This case represents the most recent example of
the tension created in the trial courts and the
Court of Appeals by the application of the Rules of
Evidence to the unique situation of a child witness
in an alleged sexual abuse case. The tension origi-
nates from the conflict between two underlying
policies: a desire to protect the most vulnerable of
our citizens from heinous and damaging exploita-

*Q.* I've talked to you a little bit but would you just pick it up
from who said what from the first moment that you can
remember when you were alone together. Pick it up from
there, what, if anything, was said in response, if you can for us.

*A.* Well, yes.

*Q.* Okay, would you do that please.

*A.* Well, [R _____ and her mother] were crying and
[her mother] was really crying and she kept saying, "Did Bill
do anything, is that why you are getting sick?" and she kept on
looking all shook up and she said, "No," and then [her mother]
kept saying, "I know there's something wrong."

*Q.* Okay.

*A.* And they were crying and we were in the room there and
they were both crying and [her mother] says, "Did Bill have
anything to do with this?", and [R _____] was all shook
up and she said, "No." So then she said, "[G _____], I
know there's something wrong, there's something wrong." So I
said, "[R _____], tell the truth. Did Bill do something?"
And she said that he stuck his fingers in her and then I says,
well, that is it, that's what she said.

*Q.* Okay. So then, of course—to whom were you speaking
when you said that, there it is?

*A.* To [her mother].

*Q.* Okay. Did you or anyone else suggest the answer to
[R _____]?

*A.* Well, I believe that [her mother] asked her if he was
playing around with her or if he was playing with himself or
something.

*Q.* Okay. I don't want to put any words in your mouth. Was
there anything else she said along those lines?

*A.* Well, she kept saying—she kept denying it and then she
said that he pinched her and told her not to say anything and
she said that she—he told my other daughter to go get a fork
because he was going to eat her, stuff like that.

tion, and a need to protect the accused individual against both erroneous conviction and the devastating consequences that can follow. The tension is exacerbated by an ever-growing number of such cases,[2] and by what some members of the bench and bar may perceive as an overly rigid application and unfortunate effect of the Rules of Evidence in this category of cases.

The attempts to resolve this tension vary. The Court of Appeals in this case has urged us to reconsider the holding in *People v Kreiner,* 415 Mich 372; 329 NW2d 716 (1982). What remains consistent, however, is the perception that existing rules of evidence and procedure may not adequately deal with these cases. This case illustrates an extension of the Rules of Evidence to accommodate facts which fail to neatly fall within a recognized exception to the hearsay rule.

III

An excited utterance is defined as: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2). Traditional justification for this rule lies in the belief that "special reliability" can be afforded a statement made while under sufficient stress or excitement because "the declarant's powers of reflection and fabrication" are removed. McCormick, Evidence (3d ed), § 297, p 855.[3] To qualify as an

_____

[2] The most recent statistics from the Department of Social Services indicated that for the fiscal year beginning October 1, 1986, to September 30, 1987, 3,457 cases of child sexual abuse were confirmed in Michigan.

[3] See 4 Weinstein, Evidence, ¶ 803(2)[01], pp 803-85 to 803-86:

The assumption underlying this exception is that a person under the sway of excitement precipitated by an external

excited utterance, two requirements must be satisfied. First, there must be a startling event, and, second, the resulting statement of the declarant must be made while under the excitement caused by that event.[4] In *People v Gee,* 406 Mich 279, 282; 278 NW2d 304 (1979), this Court summarized the criteria for the excited utterance as follows:

> To come within the excited utterance exception to the hearsay rule, a statement must meet three criteria: (1) it must arise out of a startling occasion;[4] (2) it must be made before there has been time to contrive and misrepresent; and (3) it must relate to the circumstances of the startling occasion.

[4] Startling enough to produce nervous excitement and to render the utterance spontaneous and unreflecting.

The second prong of *Gee* deals with the relative time frame, i.e., the statement "must be made before there has been time to contrive and misrepresent." Obviously this statement does not contemplate a sequence in which the utterance necessarily follows immediately on the startling event, just as it does not contemplate admission of a statement made while under control, even though made contemporaneously. Thus, *Gee* did not subordinate the requirements that the statement must be made while under the stress of excitement and relate to the startling event, to the time-to-contrive element of the formulation. Logically there is always time to contrive whether the statement begins as the event is observed or is made ten

startling event will be bereft of the reflective capacity essential for fabrication and that, consequently, any utterance he makes will be spontaneous and trustworthy.

[4] McCormick, *supra,* pp 854-855; Weinstein, n 3 *supra,* pp 803-87 to 803-89.

minutes later. Properly understood, *Gee's* require-
ment that the statement must "be made before
there has been time to contrive and misrepresent"
is simply a reformulation of the inquiry as to
whether the statement was made when the wit-
ness was still under the influence of an over-
whelming emotional condition.

The focus of MRE 803(2), given a startling event,
is whether the declarant spoke while still under
the stress caused by the startling event. Because
the justification for this rule is lack of capacity to
fabricate rather than the lack of time to fabricate,
which is the justification for the present sense
impression exception, MRE 803(1), "the period of
acceptable time will frequently be considerably
longer" under 803(2) than is acceptable under
803(1). 4 Weinstein, Evidence, ¶ 803(2)[01], p 803-
90.

> The crucial point is that the court must be able
> to find that the declarant's state at the time he
> made the declaration ruled out the possibility of
> conscious reflection.
> Physical factors, such as shock, unconsciousness
> or pain, may prolong the period in which the risk
> of fabrication is reduced to an acceptable mini-
> mum. The interaction of other factors may also
> affect the court's determination . . . including the
> nature of the startling event, the character of the
> statement, the condition of the declarant, the iden-
> tity of the declarant, and the availability of other
> evidence. [Weinstein, *supra,* pp 803-91 to 803-94.]

Few could quarrel with the conclusion that a
sexual assault is a startling event.[5] The difficulty
in this case arises because the statements at issue
were made approximately one month after the

_____

[5] "The sufficiency of the event or occurrence itself to qualify under
this exception is seldom questioned." McCormick, *supra,* p 855.

alleged assault, immediately after a medical examination of the child's pelvic area, and after repeated questioning by her parents. Under these circumstances, it simply cannot be concluded that the statements were made "while the declarant was under the stress of excitement *caused by the event or condition.*" Certainly the declarant was under stress, but one cannot safely say that this stress resulted from the alleged assault rather than from a combination of the medical examination and repeated questioning.[6]

The prosecution argues that should we find the statements at issue inadmissible under MRE 803(2) we should nonetheless hold that the statement of a child should be admissible to corroborate the child's trial testimony.[7] We are unwilling to do so in the context of this case. The hearsay testimony of the parents was not offered merely to corroborate the child's testimony, but rather was offered and argued for its substantive worth as the prosecution's closing argument clearly reveals:

And ladies and gentlemen, I would suggest to

---

[6]   Evidence that the statement was self-serving or made in response to an inquiry, while not justification for automatic exclusion, is an indication that the statement was the result of reflective thought, and where the time interval permitted such thought these factors might swing the balance in favor of exclusion. Proof that between the event and the statement the declarant performed tasks requiring relatively careful thought, of course, is strong evidence that the effect of the exciting event had subsided. Because of the wide variety of factual situations, appellate courts have recognized wide discretion in trial courts to determine whether in fact a declarant was at the time of an offered statement still under the influence of an exciting event. [McCormick, *supra,* p 857. Emphasis added.]

[7] The prosecution contends that the tender years exception addressed in *People v Kreiner, supra,* is not an exception to the hearsay rule as it "is not hearsay, because it is not substantive evidence at all." While this statement may be accurate, an issue we need not decide, it is clear from the record that the statements admitted were considered without limitation as to their substantive use.

you that that was what was happening on that night in question that the statements made by [R_____] at the hospital can be considered by you and even if she hasn't said on the stand what happened as she did yesterday, she just clammed up and said, "I don't remember," or, "I don't want to say anything," you can still find that the defendant is guilty merely from the testimony that the mother gave as to the information given to her and to the father as to what she said in the hospital.

These comments establish that the parents' testimony was presented to the jury without limitation as substantive proof of defendant's guilt.[8]

The admission of this evidence being erroneous, we must determine whether a miscarriage of justice has resulted. MCL 769.26; MSA 28.1096. Our inquiry is to the "effect the error had or reasonably may be taken to have had upon the jury's decision." *Kotteakos v United States,* 328 US 750, 764; 66 S Ct 1239; 90 L Ed 1557 (1946). To determine whether the defendant was so prejudiced that reversal is required, we evaluate the prejudicial effect of testimony in the light of other competent evidence. *People v Kregger,* 335 Mich 457; 56 NW2d 349 (1953). In light of the emphasis placed on this evidence by the prosecution, we cannot safely conclude that the error did not have substantial influence on the jury's result. Although the child testified at trial regarding the facts related by her parents, these facts were denied by the defendant. When viewed as a one-to-one credibility contest between the child and defendant, the reinforcement provided by the people's hearsay

_____

[8] We note that the prosecution has acknowledged that the testimony was used substantively and that the Court of Appeals noted that the victim's testimony was (understandably) sketchy and at times inconsistent.

evidence may have tipped the scales toward a guilty verdict. In any event, upon review of the whole record, we conclude that the error was such that failure to grant the requested relief would be inconsistent with substantial justice.

IV

Wigmore summarized the general rules regarding admission of out-of-court statements by the victim of a sexual offense as follows: 1) the fact of complaint, including the time and place, but not the identity of the perpetrator, is admissible through third-party testimony in the case in chief,[9] 2) the details of the complaint, by the majority rule, are not admissible as substantive evidence unless, 3) they come within a hearsay exception such as excited utterance or a res gestae or tender years exception (where recognized), and 4) the statement may be admitted to support the complainant's credibility where the rules of the jurisdiction would otherwise allow use of a prior consistent statement in rehabilitation. See 4 Wigmore, Evidence (Chadbourn rev), §§ 1134-1138, pp 297-312.[10]

---

[9] Accord *People v Baker,* 251 Mich 322, 325; 232 NW 381 (1930); *People v Vaughn,* 75 Mich App 540; 255 NW2d 677 (1977); *People v Lawson,* 34 Mich App 620; 192 NW2d 60 (1971).

[10] Specifically, § 1136 states:

When the complaint is admitted on this theory, certain limitations upon its use follow logically and necessarily.

(1) *Only the fact of the complaint, not the details.* The purpose is to negative the supposed inconsistency of silence by showing that there was not silence. Thus the gist of the evidential circumstances is merely nonsilence, i.e., the fact of a complaint, but the fact only. That she complained of a rape, or an attempt at rape, is all that principle permits; the further terms of her utterance (except so far as to identify the time and place with that of the one charged) are not only immaterial for the purpose, but practically turn the statement into a hearsay assertion, and as such it is inadmissible (except on the third theory).

This Court long ago struck a balance, between the competing policy interests found in child sexual abuse cases and created a special hearsay exception. In *People v Gage,* 62 Mich 271; 28 NW 835 (1886), the Court observed the uniform rule that the fact of complaint is admissible in the case in chief in a trial for sexual assault,[11] and recognized a special exception for the admission of a third party's testimony of the details of the complaint where the "party outraged is of tender years, and her silence is the direct consequence of fears of chastisement induced by threats of the perpetrator of the wrong." *Id.* at 274; *People v Baker,* 251 Mich 322, 324-325; 232 NW 381 (1930). What was to become known as the "tender-years exception" was limited to forcible rape cases, it being determined that except for the most extreme offense of rape the admission of such evidence would upset the balance of competing interests and allow the victim "to make corroborative evidence upon his own statement to a third party, and of which rule evilly-disposed persons would be likely to take advantage." *People v Hicks,* 98 Mich 86, 90; 56 NW 1102 (1893).

(2) *The woman must be a witness.* Since the only object of the evidence is to repel the supposed inconsistency between the woman's present testimony and her former silence, it is obvious that if she has not testified at all, there is no inconsistency to repel, and therefore the evidence is irrelevant. In a rape, for instance, charged to have been committed on a frequented way, and testified to by several bystanders, without calling the woman herself to the stand, it is entirely immaterial whether she made complaint or not; there is no story of hers before the court, and there is therefore no suspicion about such a story and nothing to repel. On the other hand, if the woman has taken the stand, it is immaterial whether she has been impeached or cross-examined (a matter of importance under the next theory); the fact of complaint may be introduced immediately, even by her own testimony in chief.

[11] This rule is still universally recognized, Wigmore, *supra,* § 1136, pp 307-310.

Thus, in sex abuse cases involving children, the State of Michigan permitted third-party testimony in the case in chief of the fact of the complaint and the details of the complaint where the *Gage* conditions were met. While there is little case authority in Michigan, case law suggests that third-party testimony is admissible to rehabilitate where the impeachment of a child victim amounted to a claim of recent fabrication, or a claim of bias or interest, *People v Hamp,* 110 Mich App 92; 312 NW2d 175 (1981).

In *People v Kreiner, supra,* this Court held that the tender-years exception did not survive the adoption of the Michigan Rules of Evidence, barring the use of this theory to admit third-party testimony of the details of the offense. Use of third-party testimony to rehabilitate the impeached child has also been limited by the apparent requirement that the impeachment must amount to a suggestion of recent fabrication or contrivance and that the prior statement must have been made at a time when there was no motive to fabricate. *People v Washington,* 100 Mich App 628, 632-633; 300 NW2d 347 (1980). See, e.g., *Cunningham v State,* 100 Nev 396; 683 P2d 500 (1984) (impeachment by a suggestion that the victim's testimony was influenced by the mother and by demonstration that prior to the acts in question the victim was jealous of the attention paid by the defendant to the victim's sister; a prior consistent statement was admissible to rebut a charge of improper influence).

Our review of cases on application for leave to appeal in the wake of *Kreiner* has shown increasing resort to the excited utterance exception to admit a young child's statements. The problems inherent in sex offense cases involving a young child cannot, however, be resolved by stretching

the excited utterance exception so far that its
intended purpose is abused.

It could be observed that adoption of the Michigan Rules of Evidence did not abrogate case law
which permitted the use of prior consistent statements for limited purposes,[12] *People v Edwards,*
139 Mich App 711, 715; 362 NW2d 775 (1984), or
that a preferred approach to the problem is that
taken by the Federal Rules of Evidence which
define certain prior statements as nonhearsay.[13]

---

[12] The Court of Appeals has urged us to reexamine the holding in
*Kreiner* with an eye towards breathing new life into the "tender
years" rule. *Kreiner* was premised upon the language of MRE 802:
"Hearsay is not admissible except as provided by these rules." Because the exceptions listed in MRE 803 did not contain the "tender
years" rule, that doctrine was deemed superseded when the Rules of
Evidence were adopted.

Were we to reexamine *Kreiner* in light of the argument that the
"tender years" rule is one allowing for corroboration of a victim's
testimony rather than for its substitution with hearsay evidence, a
majority might agree that *Kreiner* is distinguishable.

> The rule in this State is that where the victim is of tender
> years the testimony of the details of her complaint *may be
> introduced in corroboration of her evidence,* if her statement is
> shown to have been spontaneous and without indication of
> manufacture; and delay in making the complaint is excusable
> so far as it is caused by fear or other equally effective circumstance. [Emphasis added. *People v Baker,* 251 Mich 322, 326;
> 232 NW 381 (1930).]

In light of our decision to publish for comment a court rule addressing these concerns, we find it inappropriate to revisit *Kreiner* at this
time.

[13] Although the Federal Rules of Evidence now define a prior
consistent statement offered to rebut a charge of recent fabrication, or
improper influence or malice, as not hearsay, FRE 801(d)(1)(B), there
is an important unsolved question as to whether the conditions for
use of consistent statements as nonhearsay substantive evidence limit
the use of consistent statements merely to support the credibility of a
witness, see McCormick, Evidence (3d ed), § 49, see also *United States
v Rubin,* 609 F2d 51, 66-70 (CA 2, 1979), where Judge Friendly,
relying on the flexible approach suggested by Justice COOLEY in
*Stewart v People,* 23 Mich 63, 68 (1871), contends that nonsubstantive
use is not limited by FRE 801(d) and observes that rehabilitation has
been permitted, with a limiting instruction where requested, "even
though there was nothing to indicate any difference of motivation on
the two occasions."

Some courts have relaxed the rules for corroboration testimony by holding that use of a prior consistent statement for rehabilitation may be permissible even where the statement was made after the motive to fabricate had already arisen, see *Nusunginya v State,* 730 P2d 172 (Alas App, 1986), *People v Koon,* 724 P2d 1367 (Colo App, 1986), and cases cited in anno: *Admissibility of impeached witness' prior consistent statement—Modern state criminal cases,* 58 ALR4th 1015, 1062-1065. Several states have enacted statutes which provide for the use of videotaped testimony of the child witness.[14] Others have enacted hearsay exceptions designed specifically for prosecutions of child sexual abuse.[15] Wisconsin has used the catch-all residual hearsay exception to admit hearsay statements of a child. *Bertrang v State,* 50 Wis 2d 702; 184 NW2d 867 (1971).

We have yet to take steps specifically directed at the unique evidentiary problems which arise in the prosecution of child criminal sexual conduct cases. While we have declined the prosecution's invitation to overrule *Kreiner, supra,* we agree with the observation that this case illustrates the

[14] See, e.g., Ariz Rev Stat Ann 13-4251 to 13-4253; Ark Stat Ann 16-43-2036; Cal Penal Code 1346; Colo Rev Stat 18-6-401.3; Fla Stat Ann 92.53; Ind Stat Ann 35-37-4-6; Ky Rev Stat Ann 421.350; Me Rev Stat Ann, tit 15, § 1205; MCL 600.2163a, 712A.17b; MSA 27A.2163(1), 27.3178(598.17b); Mont Code Ann 46-15-401 to 46-15-403; NM Stat Ann 30-9-17; NY Crim Proc Law 190.32; SD Cod Laws Ann 23A-12-9 to 23A-12-10; Tex Stat Ann 38.071; Vt Rules of Evid 807; Wis Stat Ann 967.04(7)(b). The Michigan statute does not address the use of the statement for corroboration or rehabilitation. It permits substantive use of the taped testimony at trial in instances where a judge finds that the witness will be "psychologically or emotionally unable to testify." MCL 600.2163a(13); MSA 27A.2163(1)(13).

[15] See, e.g., Ariz Rev Stat Ann 13-1416 and 8-238; Ark Rules of Evid 803(25)(A); Cal Evid Code 1228; Colo Rev Stat 13-25-129; Ind Stat Ann 35-37-4-6; 38 Ill Ann Stat 115-10; Iowa Code Ann 910A.14; Kan Stat Ann 60-460(dd); Ky Rev Stat Ann 421.355; Minn Stat 595.02(3); SD Cod Laws Ann 19-16-38; Tex Stat Ann 38.072; Utah Code Ann 76-5-411; Vt Rules of Evid 804a; Wash Rev Code Ann 9A.44.120.

need for this Court to consider an amendment of the rules. The proposed court rule which we have ordered published today is directed at this problem.

V

The trial court erred in admitting certain hearsay statements to the substantial prejudice of the defendant. The defendant's conviction is reversed, and the case is remanded to the circuit court for a new trial.

RILEY, C.J., and BRICKLEY, CAVANAGH, and GRIFFIN, JJ., concurred with BOYLE, J.

LEVIN and ARCHER, JJ. We concur except for part IV.

LEVIN, J. (*concurring in result*). We have signed the opinion of the Court except for part IV, which contains statements unnecessary to decision in the instant case.[1]

ARCHER, J., concurred with LEVIN, J.

[1] The tender years exception, adverted to in part IV, permitted the admission of third-party testimony of the child's statements only to corroborate the child's own testimony. See *People v Kreiner,* 415 Mich 372, 376; 329 NW2d 716 (1982), quoting *People v Baker,* 251 Mich 322, 326; 232 NW 381 (1930).

Also noteworthy is that the cases referred to in *People v Washington,* 100 Mich App 628, 633; 300 NW2d 347 (1980), do not authorize rehabilitation where the complainant has been impeached on the basis that he is mistaken or lying unless he has been impeached on the basis that he fabricated the allegation sometime after he made his consistent statement.

Statements made long after the fact, by an easily influenced youngster, after repeated and suggestive questioning by parents, are the sort of statements which should be excluded.