*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER WILLIS,

Defendant-Appellant.

UNPUBLISHED
March 21, 2019

Nos. 340501; 340520
Macomb Circuit Court
LC No. 2017-000455-FH;
2016-004579-FH

Before: TUKEL, P.J., and SHAPIRO and GADOLA, JJ.

SHAPIRO, J. (*dissenting*).

I respectfully dissent.

On October 4, 2016, defendant and his live-in girlfriend, the complainant, went to Dunham's to purchase a handgun. At the store, defendant paid for the gun and complainant completed the registration documents in her name. Ten days later, defendant moved out of the apartment he shared with complainant, taking all his possessions. When moving out he took the gun with him. Complainant, asserting that the gun had been a gift to her from defendant, demanded that he return it to her, and he refused unless she paid him for it. About one month later complainant contacted the police, reporting that defendant had stolen her gun. Eventually, defendant was charged with larceny of a firearm and receiving and concealing a stolen firearm.

The *sole* issue at trial was whether defendant or complainant owned the gun. Relevant to that determination were the testimony of the parties concerning the purchase of the gun, whether defendant, having paid for it, intended it as a gift to complainant and whether the fact that it was registered in complainant's name demonstrated that it belonged to her. The case was indisputably a one-on-one credibility contest. In such a setting, any admission of irrelevant or prejudicial evidence must be reviewed with particular care given the likelihood that it will improperly effect the verdict. "In a trial where the evidence essentially presents a one-on-one credibility contest between the victim and the defendant, [improperly admitted] evidence may tip the scales against the defendant, which means that the error is more harmful." *People v Gursky*,

-1-

486 Mich 596, 620-21, 786 NW2d 579 (2010). See also *People v Snyder* 301 Mich App 99, 112; 835 NW2d 608.

Prior to trial, the prosecution filed a notice of MRE 404(b) evidence seeking to admit several prior acts involving domestic violence. The defense objected. At the hearing on this objection, the prosecutor withdrew the notice explaining that she had incorrectly believed defendant was charged with domestic violence in this case, which would have allowed the evidence to be admitted under MCL 768.27b. The prosecutor now understood that domestic violence was not a charge and confirmed that she would not introduce such evidence.

Despite the withdrawal of the MRE 404(b) notice, the prosecution introduced MRE 404(b) evidence at trial through the testimony of the arresting police officer.[1] The ostensible purpose of this officer's testimony was to establish that he found the weapon in defendant's backpack, i.e., in his possession. Although defendant's removal and retention of the gun was not really in dispute, the discovery of the gun in his possession was relevant to an element of the offense and so properly introduced. However, during his testimony the officer made multiple statements that violated MRE 404(b)(1) and, given the lack of notice, MRE 404(b)(2).

First, the officer testified that he encountered defendant when he was called to the scene of a "domestic violence incident" between defendant and an ex-girlfriend who was the mother of his children. The officer described the scene in some detail, including that he heard "yelling and screaming" at the scene and saw items being thrown. Most significantly, he told the jury that defendant had a "previous history of domestic incidents," that numerous police cars reported to the scene because they believed there to be a "potential for violence" and because they believed that there "may be weapons involved."

As noted, that defendant was in possession of the gun was relevant, albeit to an element that was not seriously disputed. However, it was surely irrelevant that he possessed the weapon while engaged in a domestic dispute with a third party, that he had been involved in other domestic disputes and that the police believed he presented a risk of violence. The officer's testimony recounting these facts was of no probative value. "Evidence is probative if it tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *People v Denson*, 500 Mich 385, 401-402; 902 NW2d 306 (2017), quoting MRE 401.

The challenged testimony was evidence of other wrongs and of character and so inadmissible under MRE 404(b)(2) given the lack of notice. The admission of the evidence also violated MRE 404(b)(1) which permits such evidence only if it is probative of issues such as "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge identity or absence of mistake or accident . . . ." The evidence was not relevant to

---

[1] Defense counsel did not object when this occurred but did object before trial and obtained a favorable ruling. Whether the issue was properly preserved can be debated, but is of little consequence because the error was plain.

any of these purposes; indeed, the prosecution does not even make the claim that it was. The prosecution argues only that it served to "elicit the events of the specific police response."

We can readily dispense with this argument. There was a time when the officer's extraneous testimony might have been admitted under the res gestae exception to MRE 404(b). However, it is now settled that there is no res gestae exception to MRE 404(b) and that such evidence must pass muster under the rule. *People v Jackson*, 498 Mich 246, 264; 869 NW2d 253 (2015) ("We begin once again with the plain language of MRE 404(b), which sets forth no such 'res gestae exception' from its coverage. Nor do we see any basis for reading one into the rule.") Thus, it is no longer enough to assert that the improper evidence should be admitted to show "context" or, as in this case, to "elicit the events of the specific police response."

Even if the challenged testimony had some relevancy, it would be substantially outweighed by its prejudicial effect. In a case that was a credibility contest, the jury learned that defendant had an ugly domestic dispute with his children's mother, that this was not an isolated incident and the police had been called to the scene of multiple domestic disputes involving him and that the police considered him potentially violent. This is classic "bad man" evidence which

> presents three types of impropriety. First, that jurors may determine that although defendant's guilt in the case before them is in doubt, he is a bad man and should therefore be punished. Second, the character evidence may lead the jury to lower the burden of proof against the defendant, since, even if the guilty verdict is incorrect, no "innocent" man will be forced to endure punishment. Third, the jury may determine that on the basis of his prior actions, the defendant has a propensity to commit crimes, and therefore he probably is guilty of the crime with which he is charged. All three of these dimensions suggest a likelihood that innocent persons may be convicted. [*People v Allen*, 429 Mich 558, 569; 420 NW2d 499 (1988) (citation omitted).]

Similarly, in *Denson*, 500 Mich at 410, the Supreme Court warned "that other-acts evidence carries with it a high risk of confusion and misuse. When a defendant's subjective character [is used] as proof of conduct on a particular occasion, there is a substantial danger that the jury will overestimate the probative value of the evidence." (Quotation marks and citations omitted).

Nevertheless, the prosecution argues and the majority concludes that the improper admission of this evidence was harmless, a conclusion that cannot be squared with the law or the evidence. The majority first states that informing the jury that defendant had a history of domestic disturbances and was considered dangerous by the police was not overly prejudicial because the officer also testified that he located the gun in defendant's backpack, a fact which was relevant and admissible.[2] However, the fact that a witness provides some relevant testimony is obviously not grounds to admit other testimony by that witness which violates the rules of

---

[2] The officer could easily have testified to discovery of the gun in defendant's backpack without referring to the setting in which it occurred, let alone the existence of prior domestic incidents and the police concern that the defendant might be armed and dangerous.

evidence. Nor is it grounds to conclude, as the majority does, that the improperly evidence is harmless.

The majority's second rationale is even more circular. It argues that the verdict shows that the jury found the complainant more credible, when in fact we do not know if that was the basis for the verdict or if the verdict was influenced by the improperly admitted other acts evidence. Based on this assumption the majority then states that "defendant has failed to show how defendant's past instances of domestic 'incidents' influenced the jury's ability to determine credibility." This is a curious assertion given that the prejudicial effect of improperly admitted 404(b) evidence is well-understood. Rather than weighing that likely prejudice against the untainted evidence so as to determine if the error was harmless,[3] the majority seems to suggest that the prejudicial effect must somehow be conclusively proven to have actually controlled the verdict. This assertion implies that absent post-verdict interviews with jurors confirming the effect of the error—which a court would likely decline to consider—we must conclude that the error was harmless. However, the law does not require a defendant to demonstrate that the jury's deliberations and verdict were in fact improperly effected. Rather, an error justified reversal if "it is *more probable than not* that the error affected the outcome of the proceedings," *People v Young*, 472 Mich 130, 141-142; 693 NW2d 801 (2005) (emphasis added), a determination that reviewing courts are routinely entrusted with despite the fact that it cannot be known with certainty.[4]

/s/ Douglas B. Shapiro

---

[3] "Our inquiry is to the effect the error had or reasonably may be taken to have had upon the jury's decision. To determine whether the defendant was so prejudiced that reversal is required, we evaluate the prejudicial effect of testimony in the light of other competent evidence." *People v Straight*, 430 Mich 418, 427; 424 NW2d 257 (1988) (quotation marks and citation omitted). "An error is outcome determinative if it undermined the reliability of the verdict; in making this determination, this Court should focus on the nature of the error in light of the weight and strength of the untainted evidence." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks and citation omitted).

[4] I also disagree with the majority's suggestion that the improper testimony was not emphasized by the prosecution because it was mentioned only once in the prosecutor's closing argument. This overlooks the fact that in her cross-examination of defendant, the prosecutor engaged in lengthy questioning (5 transcript pages) concerning the events at the domestic incident. He was asked about the reason for the dispute, to read and comment on his ex-girlfriend's written statement about the event in which she stated that she did not want him to see the children because he had been drinking, whether he had a license to carry a concealed weapon and whether the gun was loaded.