# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

BENNIE LEE ROBINSON,

       Defendant-Appellant.

UNPUBLISHED
January 19, 2016

No. 323467
Wayne Circuit Court
LC No. 14-003459-FC

Before: RIORDAN, P.J., and JANSEN and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of two counts of second-degree murder, MCL 750.317, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to 60 to 100 years' imprisonment for each murder conviction, 40 months to 5 years' imprisonment for the felon in possession of a firearm conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

Defendant's convictions arise from the December 19, 2011 shooting deaths of Earl Thomas, Jr. (Thomas) and Marcus Fly at a drug house in Detroit. At least two other men were present in the home at the time Thomas and Fly were shot. One person, David Sumlin, testified at trial that defendant entered the home in which he, Thomas, Fly, and Frank Coleman were engaged in selling drugs. Sumlin testified that after remaining in the home for approximately half hour, defendant pulled a handgun and ordered Sumlin and Coleman into separate rooms. Sumlin then heard gunshots and, after eventually leaving the room he was in, found Thomas dead and Fly missing. Fly's body was later discovered in the basement. Sumlin was not able to identify defendant or anyone else in a photographic array conducted shortly after the crime, but he later identified defendant at the preliminary examination and at trial. Coleman, who had absconded from parole, did not testify at the preliminary examination and could not be located for trial. Another witness, Larry Davis, testified that shortly after the shooting, Coleman called him on the phone and told him that defendant had shot his brother, Thomas.

The prosecutor's theory at trial was that another person, Edward Robinson, had sent defendant to the house to harm Thomas's brother, Davis, because of a falling out between

-1-

Robinson and Davis related to their ongoing sale of drugs. The defense theory at trial was misidentification.

## I. EVIDENTIARY ISSUES

Defendant argues that the trial court erred in (1) permitting Davis to testify about Coleman's telephone call shortly after the shooting, and (2) permitting Davis to testify that, before the shooting, his ex-partner Robinson called him, told him that he had "started a war," and that he was going to send defendant "at" Davis. We review the trial court's evidentiary decisions for an abuse of discretion. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). An abuse of discretion exists when the court selects an outcome that falls outside the range of reasonable and principled outcomes. *People v Waclawski*, 286 Mich App 634, 670; 780 NW2d 321 (2009).

## A. EXCITED UTTERANCE

The trial court admitted Davis's testimony regarding the substance of Coleman's telephone call shortly after the shooting under MRE 803(2), the excited utterance exception to the hearsay rule. MRE 803(2) allows for the admission of a hearsay statement if it is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The two elements necessary for admission under this exception are: (1) that there be a startling event, and (2) that the resulting statement be made while under the excitement caused by that event. *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998). In *People v Straight*, 430 Mich 418, 424; 424 NW2d 257 (1988), the Supreme Court explained that the second requirement was properly split into two inquiries: "whether the statement was made before there was time to contrive and misrepresent, and whether it related to the circumstances of the startling occasion." *Smith*, 456 Mich at 550-551, citing *Straight*, 430 Mich at 424. Whether the statement was made before there was time to contrive and misrepresent contemplates whether "the statement was made when the witness was still under the influence of an overwhelming emotional condition." *Straight*, 430 Mich at 425. But it is the "lack of capacity to fabricate, not the lack of time to fabricate, that is the focus of the excited utterance rule," and the time between the event and the utterance is not as important as "the possibility for conscious reflection." *Smith*, 456 Mich at 551.

Davis testified that he received a telephone call from Coleman shortly after the shooting in which Coleman told Davis that defendant had shot his brother. Coleman's statement related to a fatal shooting, a startling event. The evidence indicated that the call was made approximately 10 minutes after the police received a 911 call about the shooting, and according to Davis, Coleman was "screaming in the phone" during his statement. This evidence supports that Coleman was still "under the influence of an overwhelming emotional condition" when he made the statement. *Straight*, 430 Mich at 425. Although defendant argues that there was no evidence that Coleman's statement was based on personal knowledge, see *People v Kent*, 157 Mich App 780, 788; 404 NW2d 668 (1987), Sumlin's testimony that Coleman was at the home at the time of the shooting was sufficient to show that Coleman's statement was based on personal knowledge. Thus, the trial court did not abuse its discretion in admitting the testimony.

## B. STATE OF MIND HEARSAY EXCEPTION

The trial court admitted Robinson's statement to Davis that he intended to send defendant "at" Davis under MRE 803(3), the "state of mind" hearsay exception. MRE 803(3) excepts from the hearsay rule "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health). . .." Robinson's statement to Davis was admissible under MRE 803(3) to show Robinson's motive to harm Davis, and his plan for how to do so. Defendant argues that the statement was not admissible because it was offered to show whether defendant acted according to Robinson's plan, not whether Robinson acted in accordance with his plan. However, in *People v Brownridge*, 225 Mich App 291, 305-306; 570 NW2d 672 (1997), rev'd in part on other grounds 459 Mich 456 (1999), this Court held that a declarant's statement of intent to burn down a house at the behest of the defendant was admissible under MRE 803(3), "insofar as the statements had some bearing on the issue of defendant's conduct." See also *People v Brownridge (After Remand)*, 237 Mich App 210, 217; 602 NW2d 584 (1999) (reaffirming the prior decision concerning the admissibility of the statement under MRE 803(3)). Thus, Robinson's statement was similarly admissible because of its bearing on the issue of defendant's conduct. Robinson's statement was admissible to show that Robinson acted in accordance with his plan and sent defendant to the home. This statement was relevant to defendant's motive and intent, which in turn was tangential to his identity as the shooter. Thus, the trial court did not abuse its discretion in admitting the statement.

## C. CONFRONTATION CLAUSE

We reject defendant's additional arguments that admission of the two hearsay statements violated his constitutional right of confrontation. Coleman's statement was made during an emotional exchange to inform Davis that his brother had been killed. Robinson's statement was made as a threat toward Davis. Because the statements were not made for a primary purpose of proving past events for later use in a criminal prosecution, they were not testimonial and, accordingly, they were not prohibited by the Confrontation Clause. *People v Garland*, 286 Mich App 1, 10; 777 NW2d 732 (2009).

## II. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the evidence was insufficient to support his convictions. Challenges to the sufficiency of the evidence are reviewed de novo to "determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012) (citation omitted). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Circumstantial evidence and reasonable inferences arising from it may be used to prove the elements of a crime. *People v Brantley*, 296 Mich App 546, 550; 823 NW2d 290 (2012).

"The elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Goecke*, 457 Mich 442, 463-64; 579 NW2d 868 (1998). The elements of felon in possession of a firearm are (1) the defendant was in possession of a firearm and (2) the defendant had previously been convicted of a specified felony. MCL 750.224f(2). "The elements of felony-firearm are that the defendant

possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Defendant argues only that the evidence was insufficient to establish his identity as the person involved in the shooting. "[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 354, 356; 749 NW2d 753 (2008). Therefore, it is axiomatic that the prosecution must prove the identity of the defendant as the perpetrator of the charged offense beyond a reasonable doubt. Positive identification by a witness may be sufficient to support a conviction of a crime. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). "The credibility of identification testimony is for the trier of fact to resolve that we do not resolve anew." *Id.*

Here, Sumlin testified that defendant arrived at the home, had a handgun, and ushered him and Coleman into separate rooms, following which Sumlin heard gunshots and later discovered Fly dead on the floor. While Sumlin did not observe defendant actually shoot Fly or Thomas, his testimony describing defendant's conduct immediately before the shooting was sufficient to allow the jury to find beyond a reasonable doubt that defendant was at least one of the persons involved in the shooting. Moreover, Sumlin's testimony was further supported by Davis's testimony that Coleman called him shortly after the shooting to state that defendant had killed Thomas. Davis also provided evidence concerning a possible motive for the killing. This circumstantial evidence was sufficient to support a finding that defendant was involved in the shooting. *Brantley*, 296 Mich App at 550. While defendant states that Sumlin's identification testimony was suspect, the credibility of his testimony was for the jury to decide. *Davis*, 241 Mich App at 700. There was sufficient evidence of defendant's identification to support his convictions.

### III. DUE DILIGENCE AND MISSING WITNESS INSTRUCTION

Defendant next argues that the trial court abused its discretion in finding that the prosecution exercised due diligence to locate and produce Coleman for trial and denying his request for a missing witness instruction. We review a trial court's determination of due diligence and the appropriateness of a "missing witness" instruction for an abuse of discretion. *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004).

A prosecutor may be excused from producing an endorsed witness under MCL 767.40a(3) if the witness could not be produced despite the exercise of due diligence. *Id.* If due diligence is not shown, the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case. *Id.* at 389. "The test for due diligence is one of reasonableness, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *People v James (After Remand)*, 192 Mich App 568, 571; 481 NW2d 715 (1992). "Due diligence is the attempt to do everything reasonable, not everything possible" to obtain the presence of the endorsed witness. *People v George*, 130 Mich App 174, 178; 342 NW2d 908 (1983).

Here, the trial court did not abuse its discretion in finding that the prosecution exercised due diligence in attempting to secure Coleman for trial and denying defendant's request for a missing witness instruction. Despite the fact that Coleman did not attend the preliminary examination, he was still maintaining regular contact with his parole officer. Thus, the decision not to seek a witness detainer earlier was not unreasonable under the circumstances. After the

detainer was issued, good-faith reasonable efforts were made to obtain Coleman's presence for trial. Defendant's reliance on *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998), *People v Dye*, 431 Mich 58, 64; 427 NW2d 501 (1988), and *James*, 192 Mich App at 571, is misplaced because those cases are factually distinguishable. There was no evidence of leads that were not investigated as in *Bean*, the efforts to locate Coleman did not begin on the eve of trial as in *James*, and unlike the circumstances in *Dye*, Coleman did not express any intent to leave the state or go into hiding, but rather continued to report to his parole officer before he absconded. Accordingly, defendant is not entitled to relief on this ground.

## IV. DUE PROCESS

Defendant next argues that his right to due process was violated because the police and the prosecutor failed to obtain a search warrant for defendant's clothing, which defendant maintains would have been exculpatory. Defendant did not raise this issue in the trial court. Therefore, the issue is unpreserved and review is limited to plain error affecting defendant's substantial rights. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014).

Defendant relies on the prosecution's duty to disclose known evidence favorable to an accused to argue that the prosecutor, or the police, also had an obligation to discover and collect all evidence related to a crime. Defendant correctly states that a criminal defendant has a due process right to obtain exculpatory evidence possessed by the prosecution if it would raise a reasonable doubt about the defendant's guilt. *Brady v Maryland*, 373 US 83, 27; 83 S Ct 1194; 10 L Ed 2d 215 (1963). To establish a *Brady* violation, a defendant must prove that: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). In this case, however, defendant does not argue that the prosecution suppressed material evidence in its possession, but rather argues that it failed to search for and discover potentially useful evidence in the first place. It is well-established that neither the police nor the prosecutor has a duty to search for and discover evidence beneficial to the defense. *People v Burwick*, 450 Mich 281, 289 n 10; 537 NW2d 813 (1995); *People v Sawyer*, 222 Mich App 1, 6; 564 NW2d 62 (1997). Defendant's reliance on *People v Jordan*, 23 Mich App 375, 386; 178 NW2d 659 (1970), is misplaced because that case involved a failure to test material evidence already procured, not the failure to discover the evidence initially. Accordingly, defendant has not demonstrated any error, plain or otherwise.

## V. STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No.2004–6, Standard 4, none of which have merit.

### A. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that trial counsel was ineffective for (1) failing to adequately impeach the testimony of prosecution witnesses Sumlin and Davis, and (2) for failing to move to suppress Sumlin's in-court identification testimony. Defendant did not raise an ineffective assistance of counsel claim in the trial court, and this Court denied his motions to remand for an evidentiary

hearing on this issue. Therefore, this Court's review of this issue is limited to errors apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

"To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013), citing *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Nix*, 301 Mich App at 207. "There is a presumption that defense counsel was effective, and a defendant must overcome the strong presumption that counsel's performance was sound trial strategy." *People v Johnson*, 293 Mich App 79, 90; 808 NW2d 815 (2011). Defendant also bears the burden of establishing the factual predicate of his claim. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

## 1. IMPEACHMENT

Decisions regarding how to question witnesses are presumed to be matters of trial strategy. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008). "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Id.* at 411 (citation omitted). Although defendant complains that defense counsel failed to impeach witnesses Sumlin and Davis regarding certain inconsistencies in their testimony, the record discloses that counsel thoroughly cross-examined both witnesses and attempted to highlight various inconsistencies in their testimony or matters that affected their credibility. Counsel cross-examined Sumlin about his earlier failure to identify defendant, his level of intoxication during the shooting, the fact that he did not call the police after the offense even though he had a phone, the fact that he never reported what he allegedly observed and disappeared for more than two years, and the fact that he could not recall the time or day in which the shooting occurred or how many gunshots he heard. Counsel elicited Sumlin's admissions that the home had a number of visitors and that he had never seen defendant before. Although defendant challenges the lack of cross-examination concerning the lighting in the home, the record discloses that counsel questioned Sumlin's initial statement that the lighting was decent, getting Sumlin to admit that it was "enough light to see," but that the bedroom light was not turned on and that the bathroom and bedroom areas were both dark. Counsel cross-examined Davis in an attempt to discredit his own testimony, Sumlin's testimony, and Coleman's credibility. Counsel elicited Davis's admission that Robinson, who was supposed to be very angry, never personally tried to harm Davis, and that no other attempt had been made on Davis's life. In response to counsel's questioning, Davis admitted that he and defendant had not had any other negative interactions with each other. To impeach Sumlin's testimony identifying defendant as the shooter, counsel elicited that Davis knew that defendant walked with a "pretty bad" limp. During questioning, Davis stated that defendant was not Robinson's new partner, and was not one of the other men who had worked for Robinson when he and Davis were partners. Counsel also elicited from Davis that Coleman was a cocaine user. In addition, counsel explored Davis's motive to lie because the prosecutor's office told him that they would not tell his parole officer that Davis was running a drug house.

The mere fact that counsel did not cross-examine the witnesses on all contradictory aspects of their testimony and prior statements does not constitute ineffective assistance of counsel. See *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987). Most of the alleged inconsistencies identified by defendant involve minor or insignificant details. Indeed, counsel reasonably may have believed that he would have only confused the jury if he had attempted to highlight every one of the differences in testimony suggested by defendant. In contrast, counsel's more targeted attempts to cast doubt on the witnesses' memory or ability to observe were objectively reasonable and strategic. Defendant has not overcome the presumption of sound trial strategy.

## 2. FAILURE TO MOVE TO SUPPRESS SUMLIN'S IN-COURT IDENTIFICATION

Defendant argues that counsel was ineffective for failing to challenge Sumlin's in-court identification of defendant. Defendant bases this argument on the fact that Sumlin could not identify defendant in a photographic lineup shortly after the offense, but was able to identify him at the preliminary examination, where defendant was the only person in prison clothing, which defendant contends was an unduly suggestive setting. In *People v Colon*, 233 Mich App 295, 304-305; 591 NW2d 692 (1998), this Court explained:

> If a witness is exposed to an impermissibly suggestive pretrial identification procedure, the witness' in-court identification will not be allowed unless the prosecution shows by clear and convincing evidence that the in-court identification will be based on a sufficiently independent basis to purge the taint of the illegal identification. The defendant must show that in light of the totality of the circumstances, the procedure used was so impermissibly suggestive as to have led to a substantial likelihood of misidentification. Simply because an identification procedure is suggestive does not mean it is necessarily constitutionally defective. The fact that the prior confrontation occurred during the preliminary examination, as opposed to a pretrial lineup or showup, does not necessarily mean that it cannot be considered unduly suggestive. When examining the totality of the circumstances, relevant factors include: the opportunity for the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of a prior description, the witness' level of certainty at the pretrial identification procedure, and the length of time between the crime and the confrontation. [Citations omitted.]

If an identification procedure is unduly suggestive, an in-court identification will still be permitted if there is an independent basis for the witness's identification. *People v Gray,* 457 Mich 107, 114-115; 577 NW2d 92 (1998). Whether there is an independent basis for the identification is determined by the totality of the circumstances. *Id.* at 115. Factors to be considered include the witness's prior relationship with or knowledge of the defendant, the witness's opportunity to observe the offense, the nature of the offense and the physical and psychological state of the witness, the length of time between the offense and the identification, the accuracy of the witness's description of the perpetrator or discrepancies between the description and the defendant's actual appearance, whether the witness previously identified or failed to identify the defendant, whether the witness previously identified another person as the defendant, and any idiosyncratic or special features of the defendant. *Id.* at 116.

Although the preliminary examination was a suggestive atmosphere, the relevant test is whether the procedure was so impermissibly suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification. *Colon*, 233 Mich App at 304. While defense counsel did not specifically move to suppress Sumlin's in-court identification, he did challenge Sumlin's identification testimony in a pretrial motion to quash. As noted by the trial court at the hearing on the motion to quash, Sumlin testified at the preliminary examination that he had a protracted ability to observe defendant before the shooting. Sumlin stated that defendant wandered around the home for approximately 30 to 35 minutes, that there was "enough light to see," and that he was paying close attention to defendant because defendant was giving off a "bad vibe" and other people in the home around defendant to be appeared "kind of nervous." In addition, Sumlin was able to identify differences between the way defendant appeared at the preliminary examination and on the night of the shooting.

Although the time period between the commission of the crime and the preliminary examination identification was lengthy, considering the length of time Sumlin had to observe defendant before the offense and the circumstances under which the observations occurred, particularly Sumlin's explanation that he was paying close attention to defendant, it was not objectively unreasonable for counsel to believe that, under the totality of the circumstances, there either was not a substantial likelihood of misidentification, or the circumstances established that Sumlin had a sufficiently independent basis for an in-court identification of defendant. *Gray*, 457 Mich at 114-115; *Colon*, 233 Mich App at 305. Thus, defendant has not overcome the presumption of effective representation, and has not established a reasonable probability that the result of the proceeding would have been different if counsel had challenged Sumlin's in-court identification.

In addition, counsel thoroughly questioned Sumlin about his failure to identify defendant in the photographic lineup, the lighting and other circumstances affecting the reliability of Sumlin's observations of defendant, and why Sumlin did not make an earlier identification of defendant. Counsel's decision to attempt to undercut Sumlin's credibility rather than challenge the admissibility of the in-court identification was reasonable and strategic.

## B. PROSECUTORIAL MISCONDUCT

Defendant next argues that the prosecutor engaged in misconduct by (1) allowing perjured testimony to stand uncorrected, and (2) improperly vouching for Sumlin's credibility and defendant's guilt. Because defendant did not object to the prosecutor's conduct at trial, this issue unpreserved and our review is limited to plain error affecting substantial rights. *People v Gaines*, 306 Mich App 289, 308; 856 NW2d 222 (2014).

## 1. PERJURED TESTIMONY

Defendant asserts that the prosecutor committed misconduct by allowing Davis to offer perjured testimony on cross-examination by defense counsel. A defendant's right to due process "is violated when there is any reasonable likelihood that a conviction was obtained by the knowing use of perjured testimony." *People v Gratsch*, 299 Mich App 604, 619; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013). Thus, a prosecutor has "an

obligation to correct perjured testimony that relates to the facts of the case or a witness's credibility." *Id.*

Although defendant highlights instances where Davis's trial testimony about the identification of his ex-partner "Rob" differed from his prior testimony, and observes that other differences existed between Davis's trial testimony and his earlier statements to the police, the inconsistencies listed by defendant do not by themselves establish that the prosecutor knowingly used perjured testimony to obtain defendant's conviction. *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). Despite differences between Davis's trial testimony and his earlier statements, there is no indication that the prosecutor sought to conceal any inconsistencies from defendant. *Id.* Moreover, simply because the testimony of one witness differs, even significantly, from the testimony of other witnesses does not mean that the witness committed perjury. The prosecution is not obligated to disbelieve its own witness merely because the witness's testimony is contradicted by testimony from another witness. *People v Lester*, 232 Mich App 262, 278-279; 591 NW2d 267 (1998), overruled in part on other grounds in *Chenault*, 495 Mich at 150. Defendant's argument does not involve an issue of perjury, but of credibility, which was a matter for the jury to resolve. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

## 2. IMPROPER VOUCHING

Defendant argues that the prosecutor improperly vouched for the veracity of Sumlin's testimony. We disagree. The prosecutor was permitted to argue from the evidence why Sumlin's testimony should be believed. The prosecutor did not suggest that he had some special knowledge that Sumlin's testimony was truthful. *People v Bennett*, 290 Mich App 465, 478; 802 NW2d 627 (2010). Accordingly, there was no misconduct.

## 3. CELL PHONE RECORDS

Defendant argues that the prosecutor committed misconduct by arguing that phone records for a cell phone associated with Edward Robinson and Tesha Kimbrough, the mother of defendant's child, indicated that the phone was located near the home where the shooting occurred around the time the 911 call was made concerning the shooting. Defendant argues that this evidence was inadmissible because the officer who testified about the records acknowledged that he could not tell who possessed the phone at the time. "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). The evidence was at least marginally relevant, given the allegations that Robinson wanted defendant to harm Davis and sent defendant to the home. Moreover, considering that defense counsel established that it could not be determined that the phone was actually used at the home, or who used it, defendant has not established an outcome-determinative plain error. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

## C. CUMULATIVE ERROR

Defendant lastly argues that the cumulative error of several errors denied him a fair trial. "The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not warrant reversal." *People v Knapp*, 244 Mich App 361, 388; 624

NW2d 227 (2001). The errors must "have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *Id*. Because defendant has not demonstrated the existence of an individual error, he cannot show that the cumulative effect of multiple errors denied him a fair trial.

Affirmed.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Karen M. Fort Hood