# STATE OF MICHIGAN

# COURT OF APPEALS

---

SHELLEY ROZMIAREK,

        Plaintiff-Appellee,

v

JOSEPH ROZMIAREK,

        Defendant-Appellant.

UNPUBLISHED
July 19, 2018

No. 339976
Monroe Circuit Court
Family Division
LC No. 13-036428-DM

---

Before: GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right an order denying his motion to change custody of the parties' minor child, GR. We affirm.

## I. ADMISSIBILITY OF HEARSAY STATEMENT

Defendant first argues that the trial court erred in ruling that GR's hearsay statements disclosing alleged sexual abuse of her by plaintiff's boyfriend ("the boyfriend") failed to qualify for admission under the excited utterance exception to the hearsay rule. We disagree.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Craig v Oakwood Hosp*, 471 Mich 67, 76; 684 NW2d 296 (2004). An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). "Close questions arising from the trial court's exercise of discretion on an evidentiary issue should not be reversed simply because the reviewing court would have ruled differently. The trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998) (citations omitted). Questions of law underlying evidentiary rulings are reviewed de novo. *Elher*, 499 Mich at 21.

" 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is inadmissible except as provided by the rules of evidence. MRE 802. The excited utterance exception to the hearsay rule is contained in MRE 803(2), which allows the admission of a hearsay statement if (1) it relates "to a startling event or condition" and (2) was "made while

-1-

the declarant was under the stress of excitement caused by the event or condition." See also *People v Straight*, 430 Mich 418, 423-424; 424 NW2d 257 (1988). "The focus of MRE 803(2), given a startling event, is whether the declarant spoke while still under the stress caused by the startling event." *Id*. at 425. The excited utterance exception "allows hearsay testimony that would otherwise be excluded because it is perceived that a person who is still under the sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication so that any utterance will be spontaneous and trustworthy." *Smith*, 456 Mich at 550 (quotation marks and citation omitted). The time that passes between the startling event and the statement is an important factor to consider, but it is not dispositive. *Id*. at 551.

> [T]here is no express time limit for excited utterances. Physical factors, such as shock, unconsciousness, or pain, may prolong the period in which the risk of fabrication is reduced to an acceptable minimum. The trial court's determination whether the declarant was still under the stress of the event is given wide discretion. [*Id*. at 551-552 (quotation marks and citation omitted).]

In *Straight*, 430 Mich at 425-426, our Supreme Court held that a four-year-old child's hearsay statements regarding a sexual assault did not fall within the excited utterance exception:

> Few could quarrel with the conclusion that a sexual assault is a startling event. The difficulty in this case arises because the statements at issue were made approximately one month after the alleged assault, immediately after a medical examination of the child's pelvic area, and after repeated questioning by her parents. Under these circumstances, it simply cannot be concluded that the statements were made "while the declarant was under the stress of excitement *caused by the event or condition*." Certainly the declarant was under stress, but one cannot safely say that this stress resulted from the alleged assault rather than from a combination of the medical examination and repeated questioning. [*Id*. at 425-426.]

In *Smith*, 456 Mich at 552, our Supreme Court held that a 16-year-old declarant was still under the overwhelming influence of a sexual assault when he disclosed the assault in a hearsay statement to his mother 10 hours after the assault had occurred. The Court described a series of "extraordinary" actions taken by the declarant in the 10-hour time period reflecting "a continuing level of stress arising from the assault that precluded any possibility of fabrication." *Id*. at 552-553; see also *People v Green*, 313 Mich App 526, 535-537; 884 NW2d 838 (2015) (upholding the admission as excited utterances of hearsay statements disclosing sexual contact where each of the statements was made within minutes or hours of the defendant leaving the declarant's apartment and where the declarant was very upset and crying while making the statements).

Here, defendant testified that at around 7:00 p.m. on January 19, 2017, GR made statements indicating that she had been sexually abused by the boyfriend. According to defendant, GR seemed distraught, restless, and upset, and she looked like something was weighing on her mind. When defendant asked GR what was on her mind, GR made the statements disclosing the alleged sexual abuse by the boyfriend. There is no indication of when the alleged abuse occurred. Defendant testified that GR had been staying with him for three days when she made the statements. On the date that GR made the statements and on the day before,

defendant had spent the day out of the house working while GR spent the day with defendant's mother. Defendant did not know what his mother and GR had done while he was at work on those dates.

The trial court's determination that GR's hearsay statements were not subject to the excited utterance exception fell within the range of principled outcomes. To be sure, a sexual assault constitutes a startling event. See *Straight*, 430 Mich at 426. The record does not establish, however, that GR remained under the stress or sway of excitement caused by the alleged sexual abuse at the time she made the statements. The record affords no factual basis for determining when the alleged sexual abuse occurred. It is thus impossible to ascertain or consider the amount of time that elapsed between the alleged acts of sexual abuse and GR's hearsay statements. GR had been staying with defendant for three days at the time of the disclosure, so any alleged abuse had occurred at least several days before the statements were made. Also, defendant admittedly did not know what GR and defendant's mother had done during the day while defendant was at work away from home the day that the hearsay statements were made, or on the immediately preceding day. Unlike in *Smith*, the record is devoid of evidence establishing a continuing level of stress arising from the alleged sexual abuse. There is no evidence of any physical factors, such as shock, unconsciousness, or pain, which prolonged a period of stress caused by a startling event. Overall, no basis exists to conclude that GR was still under the stress of excitement caused by the boyfriend's alleged sexual abuse when she made the hearsay statements. The trial court thus did not abuse its discretion in ruling that GR's hearsay statements failed to qualify for admission under the excited utterance exception.[1]

---

[1] The dissent opines that GR's out-of-court statement to defendant "should have been admitted for a different purpose," namely to establish the impact the statements had on plaintiff and defendant. We disagree, for several reasons.

First, defendant, the proponent of the evidence, never suggested at the trial court to admit the statement for this other purpose. Whether defendant "should" have offered to admit it under a different theory from the one he espoused at the trial court is not before us. Indeed, the dissent sua sponte is raising this issue, as defendant does not even suggest in his brief on appeal that the evidence was admissible for any purpose other than as an excited utterance to prove the truth of the matter asserted, i.e. that GR was sexually abused by plaintiff's boyfriend.

Second, the evidence at issue was a statement GR made to defendant. Plaintiff was not present when the statement was made and therefore did not hear it; thus, for the dissent to suggest that the statement could be used to show how *plaintiff* reacted to hearing the statement is misguided. Moreover, plaintiff *was* questioned extensively about how she first heard of the sexual assault allegation (she learned through an e-mail from defendant) and what she did when confronted with the allegation. Indeed, the record reveals that defense counsel asked plaintiff about her level of concern after getting the e-mail, whether she believed the allegation, why she thought the allegation was false, why she could not "take [the allegation] seriously," and about her interactions with CPS and the police who investigated the allegation as well. Thus, there was ample evidence in the record to show plaintiff's reaction to the sexual assault allegation without resorting to an invalid evidentiary theory.

-3-

## II. TRIAL COURT'S DECISION TO DENY MOTION TO CHANGE CUSTODY

Defendant next argues that the trial court erred in denying defendant's motion to change custody. We disagree.

"Three different standards govern our review of a circuit court's decision in a child-custody dispute. We review findings of fact to determine if they are against the great weight of the evidence, we review discretionary decisions for an abuse of discretion, and we review questions of law for clear error." *Kubicki v Sharpe*, 306 Mich App 525, 538; 858 NW2d 57 (2014). Under the great weight of the evidence standard, the trial court's findings are affirmed unless the evidence clearly preponderates in the opposite direction. *Mitchell v Mitchell*, 296 Mich App 513, 519; 823 NW2d 153 (2012). The trial court's credibility determinations are accorded deference give its superior position to make such determinations. *Shann v Shann*, 293 Mich App 302, 305; 809 NW2d 435 (2011). Clear legal error exists when the trial court errs in choosing, interpreting, or applying the law. *Sturgis v Sturgis*, 302 Mich App 706, 710; 840 NW2d 408 (2013).

Custody disputes are to be determined on the basis of the best interests of the child, as measured by the 12 factors set forth in MCL 722.23. *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001). Generally, the trial court must explicitly state its findings and

---

Third, if we were to review whether the trial court erred when it failed to admit GR's statement to defendant to show the effect it had on defendant, our review would be for plain error affecting substantial rights because defendant never sought the evidence's admission under this alternate avenue. See *Kloian v Schwartz*, 272 Mich App 232, 242; 725 NW2d 671 (2006) (stating that appellate review of unpreserved issues is for plain error); *Meagher v Wayne State Univ*, 222 Mich App 700, 724; 565 NW2d 401 (1997) (stating that an objection on one ground is insufficient to preserve appellate attack on another ground). Assuming the statement was admissible for a purpose other than that offered by defendant and not to prove the truth of the matter asserted, any such alternative basis was not "plain" or "obvious," and thus its exclusion could not constitute plain error. See *Rivette v Rose-Molina*, 278 Mich App 327, 328-329; 750 NW2d 603 (2008) (stating that to reverse under plain error standard, error must be clear or obvious and affect a substantial right). In fact, the trial court told defense counsel that if GR's statements were not admissible substantively, counsel was free to pursue other avenues of admission, including as an exception to hearsay or as "not hearsay," for which "there are specific rules of evidence along those lines." It was not incumbent on the trial court to identify a particular theory for defendant on which the evidence could have been admissible. Moreover, any "error" did not affect the outcome of the proceedings, see *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008) (stating that for an error to affect a substantial right, it has to affect the outcome of the proceedings); it is clear that, although the trial court did not consider the statement substantively to show that abuse occurred, there was ample other evidence to show what the parties did, i.e. how they reacted, after the allegation of sexual assault was made. Accordingly, there is no basis for reversing the trial court's ruling or to sua sponte require that the court admit the statement for a purpose that neither party requested.

-4-

conclusions regarding each factor. *Rivette v Rose-Molina*, 278 Mich App 327, 330; 750 NW2d 603 (2008). However, the court is not required to comment on every piece of evidence entered and every argument raised. *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005). A single circumstance can be considered in determining more than one child custody factor. *Fletcher v Fletcher*, 229 Mich App 19, 24-25; 581 NW2d 11 (1998). "A court need not give equal weight to all the factors, but may consider the relative weight of the factors as appropriate to the circumstances." *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). "[T]he record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." *MacIntyre*, 267 Mich App at 452. Furthermore, if a modification of custody would change the child's established custodial environment, the moving party must demonstrate that the change is in the child's best interests by clear and convincing evidence. MCL 722.27(1)(c); *Hunter v Hunter*, 484 Mich 247, 259; 771 NW2d 694 (2009).

Notably, defendant does not challenge the trial court's determination that an established custodial environment exists with both parties. Defendant also does not dispute that his motion to modify custody, which requested that defendant be awarded primary physical custody of GR, would alter the established custodial environment, thereby requiring him to demonstrate that the change is in GR's best interests by clear and convincing evidence. See *Hunter*, 484 Mich at 259. "The 'clear and convincing evidence' standard is the 'most demanding standard applied in civil cases.' " *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995). Clear and convincing evidence is defined as the type of proof which

> produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. Evidence may be uncontroverted, and yet not be "clear and convincing." Conversely, evidence may be "clear and convincing" despite the fact that it has been contradicted. [*Id.* (quotation marks, citations, and ellipses omitted).]

Defendant initially contends that the trial court erred when it ruled that there was no lawful evidence that the boyfriend sexually assaulted GR. Defendant notes that Child Protective Services ("CPS") and the police investigated this allegation, that CPS substantiated the claim under its internal standards, and that GR was taken to a doctor because her genital area was hurting and red. As discussed, however, the trial court did not err in excluding GR's statements as inadmissible hearsay. Defendant cites no authority establishing that CPS's substantiation of a sexual assault claim under its internal agency standards, by itself, constitutes admissible evidence in court that the alleged sexual assault occurred. Police testimony indicated that, barring new information coming forward, the boyfriend would not be prosecuted for the alleged sexual assault due to lack of evidence. Defendant's testimony about the incident in which GR was taken to a doctor because her genital area was hurting and red indicated that this occurred about six weeks before GR's alleged disclosure of abuse to defendant. The doctor informed defendant about what was causing the redness, and defendant did not contact the police or CPS about the

redness.[2]  Defendant's testimony regarding this incident does not demonstrate that the redness and pain in GR's genital area six weeks earlier resulted from sexual abuse, let alone that the boyfriend was the perpetrator of any such abuse.  Overall, defendant fails to establish that the trial court erred in concluding that there was no admissible evidence that the boyfriend sexually assaulted GR.

On a related note, defendant asserts that the trial court has exposed GR to harm by setting aside its order barring the boyfriend from having any contact with GR.  This assertion is premised on the assumption that the boyfriend sexually abused GR, and as explained above, the trial court did not err in finding that there was no admissible evidence of such abuse.  In any event, the trial court also alluded to the possibility that CPS might intervene if GR is again exposed to the boyfriend, and the CPS worker testified that a new CPS case could be opened if the boyfriend has contact with GR.  Defendant's claim that the trial court has exposed GR to harm is unsupported.

Next, defendant challenges the trial court's findings regarding six of the statutory best interest factors.[3]  Defendant first challenges the finding that the parties are equal with respect to factor (b), which concerns the parties' capacity and disposition to provide the child with love, affection, and guidance, and to continue the education and raising of the child in her religion.  MCL 722.23(b).  Defendant contends that he should prevail on this factor because he wants to put GR in preschool whereas he claims that plaintiff has refused to do so.  Defendant's argument mischaracterizes the evidence.  The testimony from the evidentiary hearing reflects that both parties wish to enroll GR in preschool and that both parties have evaluated various preschools, but that the parties have different preferences regarding which preschool GR should attend and have thus far been unable to reach an agreement on the matter.  Defendant's argument fails to establish that the trial court's finding on this factor was against the great weight of the evidence.

Defendant next argues that the trial court erred in treating the parties as equal with respect to factor (c), which concerns the parties' capacity and disposition to provide the child with food, clothing, medical care, and other material needs.  MCL 722.23(c).  Defendant claims that he should prevail on this factor because he is more willing to attend to GR's medical care.  Defendant contends that plaintiff has refused to coparent by selecting a dentist and a foot care specialist and that she has refused to consider or address the boyfriend's alleged sexual abuse of GR.  Again, defendant's argument is premised in part on his assumption that sexual abuse occurred, even though no admissible evidence supports that assumption.  Although plaintiff

---

[2] Although the doctor told defendant what was causing the redness, no evidence was presented at the evidentiary hearing regarding what the doctor said.

[3] The dissent maintains that the trial court impermissibly "limited its review of the best interest factors to events occurring since the last custody order."  Importantly, defendant did not raise this particular argument on appeal.  Indeed, there is nothing to show that the trial court self-imposed any type of temporal limitation.  Instead, the record shows that the trial court weighed and considered all of the admissible evidence that the parties submitted at the evidentiary hearing.

believed that GR may have been coached to make a false allegation of sexual abuse, plaintiff wanted GR to undergo counseling regarding the matter. Defendant testified that plaintiff never responded to emails and text messages about selecting a dentist and a foot specialist, but he acknowledged that GR has now seen a dentist and a foot specialist selected by defendant. Although defendant appears to have attended more of GR's medical appointments given his greater job flexibility, plaintiff testified that she has attended all of GR's medical appointments that were held during plaintiff's parenting time, except for an appointment that she claims defendant failed to inform her about. The parties presented conflicting testimony regarding whether defendant always notifies plaintiff of medical appointments that he has scheduled for GR. Plaintiff testified that she wanted to obtain a second opinion about the treatment of GR's hemangioma but that defendant would not agree to it. Overall, the evidence does not clearly preponderate against the trial court's finding that the parties are equal with respect to this factor.

Defendant next challenges the trial court's finding regarding factor (d), which concerns "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). Defendant claims that he should prevail on this factor because his home is stable whereas plaintiff owns a home with the boyfriend and is financially dependent on him. But the record is devoid of evidence that plaintiff's ownership of a home with the boyfriend and her financial dependence on him have affected the stability of the home environment in which GR lives with plaintiff. As the trial court noted, it appears that GR's separate living environment with each of her parents is stable. The evidence does not clearly preponderate against the trial court's finding that the parties are equal on this factor.[4]

Defendant argues that the trial court erred in treating the parties as equal under factor (g),[5] which pertains to the parties' mental and physical health. MCL 722.23(g). Defendant

---

[4] The dissent claims that the trial court failed to consider that one of GR's older sisters had been removed from plaintiff's custody when it evaluated this best-interest factor. But we discern no error in the trial court failing to acknowledge this fact in this context, when defendant never argued at the trial court, or at this Court, that this fact was pertinent to this factor. If a court need not comment on every piece of evidence entered and every argument raised, *MacIntyre*, 267 Mich App at 452, then *a fortiori*, it need not comment on arguments never raised. Moreover, even if this fact is explicitly considered, we do not believe that the totality of the evidence clearly preponderates against the trial court's ultimate finding that the factor was equal with respect to both parties.

Further, contrary to the dissent's claim that the trial court failed to acknowledge that plaintiff was living in a home purchased by her boyfriend and that the boyfriend paid a large portion of the household bills, the court did acknowledge this fact. The court found, however, that irrespective of this "economically co-dependent" relationship, there was no evidence that there "is instability right there" or that GR "has been negatively affected by that." The dissent opines that plaintiff "could be forced to relocate at any time" under this arrangement, but there was no evidence to show that this is anything other than speculation.

[5] While the dissent posits that the trial court erred with respect to best-interest factor (f), which deals with the moral fitness of the parties, MCL 722.23(k), we decline to sua sponte address this

asserts that plaintiff's mental health must be questioned because he claims that she is unreasonable in coparenting and because she has supposedly failed to acknowledge GR's sexual assault allegations. There is no evidence that plaintiff faces any mental health challenges. The fact that the parties have disagreed on certain educational and medical issues in coparenting GR does not establish that plaintiff has any mental health issues. Plaintiff has not failed to acknowledge GR's sexual assault allegations—indeed, she has urged GR to undergo counseling. The trial court's finding that the parties are equal on this factor is not against the great weight of the evidence.

Next, defendant notes that the trial court made no finding on factor (h), which concerns the child's home, school, and community record. MCL 722.23(h). The trial court noted that there was no school record given GR's age but that school would become an issue in the future if the parties could not reach an agreement on schooling issues. Defendant contends that this factor should favor him because he claims that plaintiff will not cooperate in enrolling GR in preschool. Again, the testimony at the evidentiary hearing established that plaintiff wishes to enroll GR in preschool and has evaluated various preschools but that the parties disagree on which preschool GR should attend and have not yet reached an agreement on the matter. Hence, defendant has not established that he was entitled to a finding in his favor on this factor.

Defendant next challenges the trial court's finding that the parties are equal on factor (j), which concerns the willingness and ability of each parent "to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent." MCL 722.23(j). Defendant claims that plaintiff does not communicate with defendant and that plaintiff has allowed GR to call the boyfriend, "Daddy Matt." Defendant testified that plaintiff responds to fewer than 10% of defendant's emails and text messages. Defendant estimated that 98% of his emails and text messages to plaintiff pertain to coparenting. However, plaintiff testified that she responds to defendant's emails and text messages that pertain to coparenting of GR but does not respond to other emails from defendant that are instigating or antagonizing. According to plaintiff, approximately 30% of defendant's emails and text messages to plaintiff are about coparenting, whereas the other 70% are about his feelings toward plaintiff. Plaintiff acknowledged that GR has called the boyfriend, "Daddy Matt." Plaintiff testified that when GR was young, she called the boyfriend "daddy" a couple times; plaintiff then told GR that defendant was her "daddy," but GR said that the boyfriend was her "daddy too." Plaintiff responded to GR that she could call the boyfriend "Daddy Matt" but that defendant was her dad. In other words, plaintiff was attempting to explain to GR that defendant was her dad and that, as a compromise, GR could call the boyfriend, "Daddy Matt." The trial court has now ordered the parties to discourage GR from using any parental titles in addressing third parties. The evidence does not clearly preponderate against the trial court's finding that the parties are equal on this factor.

factor because defendant on appeal does not challenge the trial court's treatment of that factor. See *Froling v Carpenter*, 203 Mich App 368, 373; 512 NW2d 6 (1993) (stating that the appellants' failure to argue an issue in their brief on appeal results in abandonment of the issue). Moreover, defendant argued at the trial court that this factor should favor neither party.

After discussing the above best interest factors, defendant claims that he prevails on six of the statutory best interest factors and that plaintiff has prevailed on none.[6] As explained above, however, defendant's arguments challenging the trial court's findings on the best interest factors are unavailing. Defendant has failed to establish any errors in the trial court's determinations that the parties are equal with respect to the six statutory best interest factors that defendant challenges. Accordingly, defendant has not shown by clear and convincing evidence, see *Hunter*, 484 Mich at 259, that a change in custody was in GR's best interests.

Defendant also argues that because the parties have been unable to agree on certain issues concerning medical care and education for GR, the trial court was obligated to award sole custody to one parent, and defendant argues that he should then be the custodial parent. Defendant cites *Fisher v Fisher*, 118 Mich App 227, 232-233; 324 NW2d 582 (1982), in which this Court stated:

> In order for joint custody to work, parents must be able to agree with each other on basic issues in child rearing – including health care, religion, education, day to day decision making and discipline – and they must be willing to cooperate with each other in joint decision making. If two equally capable parents whose marriage relationship has irreconcilably broken down are unable to cooperate and to agree generally concerning important decisions affecting the welfare of their children, the court has no alternative but to determine which parent shall have sole custody of the children. [Citation omitted.]

In determining whether joint custody is appropriate, however, the parties' ability to cooperate is but one consideration; the statutory best interest factors are also relevant to this determination. See MCL 722.26a(1); *Shulick v Richards*, 273 Mich App 320, 326; 729 NW2d 533 (2006); *Nielsen v Nielsen*, 163 Mich App 430, 434; 415 NW2d 6 (1987). The trial court here found the parties equal with respect to all of the relevant statutory best interest factors. Further, although the parties have had disagreements concerning preschool and medical issues, the trial court urged the parties to consider using a parenting coordinator, which was available through the Friend of the Court. Defendant fails to address whether the parties have followed through on the trial court's suggestion to explore this means of resolving their differences. The present record does not establish that the parties' differences are incapable of being resolved. Finally, given that the trial court did not clearly err in finding the parties equal with respect to the relevant best interest factors, defendant's claim that any award of sole custody must be in his favor is unavailing.

Affirmed.

/s/ Mark T. Boonstra
/s/ Jonathan Tukel

---

[6] The dissent claims that the trial court erred when it failed to consider factor (k), which deals with domestic violence. MCL 722.23(k). But once again, defendant has not raised this issue on appeal, so it is not properly before us. See *Froling*, 203 Mich App at 373.

-9-