# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TORY NEJUAN BRYANT,

      Defendant-Appellant.

UNPUBLISHED
January 3, 2019

No. 339286
Bay Circuit Court
LC No. 16-010342-FH

Before: BOONSTRA, P.J., and JANSEN and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his conviction following a jury trial of fourth-degree criminal sexual conduct, MCL 750.520e(1)(a) (victim age 13 to 15 years). He was sentenced as a second habitual offender, MCL 769.10, to serve 18 to 36 months in prison. We affirm defendant's conviction, but remand to the trial court for resentencing.

## I. FACTS

Defendant, who at the time of the incident in this case was 33 years old, was convicted for criminal sexual conduct involving a 14-year-old victim. The incident occurred on September 5, 2015, while they were both guests at the home of the victim's uncle in Bay City, Michigan. The victim and several other family members and friends had gathered for the uncle's wedding, and defendant was a member of the wedding party. The victim testified at trial that she was acquainted with defendant because he was her uncle's friend, but had never spoken to defendant before except for a short conversation the day before the incident when they briefly talked about a trip she had taken.

On the morning in question, she was sleeping on one of the couches in her uncle's home while her younger sister was sleeping on another couch in the same room. The other groomsmen had left the house earlier to go to the barbershop. The victim testified that at about 9:30 a.m., defendant woke her up by kneeling next to her and whispering in her ear, telling her to wake up, tickling her, kissing her cheek and her chest, and touching her breasts over her clothes while leaning over her. The victim testified that defendant was trying to touch her genitals over her clothes and that she told him to stop and tried unsuccessfully to push his hand away. She testified that when defendant noticed that her younger sister was awake and was watching, defendant walked the sister out of the room, then returned and resumed touching the victim. At that moment, the victim's grandmother arrived at the home and defendant left the room. The

-1-

victim's younger sister testified that although she did not see anything before defendant led her out of the room, she walked back into the room and saw defendant leaning over the victim with one hand on the victim's chest.

The victim testified that defendant returned and asked to use her phone to call his phone to help him locate it. Thereafter, defendant sent a text message to her asking if she was mad at him, followed by another message stating that if she was not mad then he would like to finish what they had started. The victim immediately sent defendant a text message stating "We didn't start anything, leave me alone." Defendant then sent a text to the victim stating, "Okay," followed by a text stating, "No beef . . . I didn't mean it like that . . . I just think you cool and funny."

The victim's mother arrived at the uncle's home at 11:00 a.m., about an hour and a half after the assault. She testified that the victim appeared upset and unusually nervous, and was hiding behind her uncles. The victim testified that she immediately told her mother what happened. The mother testified, however, that she repeatedly asked the victim what had upset her for about 20 minutes, and that the victim then tearfully told her about the incident and showed her the text messages.

The victim's mother testified that she confronted defendant, who denied the events. The family asked him to leave and he was no longer included in the wedding. The victim's mother and uncle then drove to the Bay City Police Department, but found it closed during the holiday weekend. When she returned to her home in Warren after the wedding, she reported the incident to the Warren police. The mother testified that about two weeks later the Bay City police contacted her, and a month later the Bay City police interviewed the victim. The victim's mother gave the police the victim's cell phone containing defendant's messages.

Bay City Detective Richard Roberts testified that he received the police report from the Warren Police Department on September 10, 2015, and spoke with the victim's mother on October 1, 2015. Roberts explained that protocol dictated that he not speak to an alleged CSC victim, and that he instead refer the victim for a forensic interview, which was conducted March 7, 2016. Roberts collected the victim's cell phone on March 21, 2016. Bay City Police Officer Robert Querback II testified that he extracted the text messages from the victim's cell phone and provided them to Detective Roberts on April 11, 2016. The warrant for defendant's arrest was issued May 23, 2016, and defendant was arrested on August 25, 2016. He ultimately was convicted of fourth-degree criminal sexual conduct. Defendant now appeals.

II. ANALYSIS

A. DELAY IN PROSECUTION

Defendant first contends that the 11-month delay between the September 5, 2015 incident and his arrest on August 25, 2016 violated his due process rights. We disagree.

We note initially that this issue is unpreserved as it was neither raised before nor decided by the trial court. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). We review unpreserved claims of constitutional error for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is

warranted only if the plain error resulted in the conviction of an innocent defendant or if the "error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id.* (quotation marks and citation omitted).

"A prearrest delay that causes substantial prejudice to a defendant's right to a fair trial and that was used to gain tactical advantage violates the constitutional right to due process." *People v Woolfolk*, 304 Mich App 450, 454; 848 NW2d 169 (2014). However, because "[t]here is no constitutional right to be arrested," a "mere delay between the time of the commission of an offense and arrest is not a denial of due process" unless "the record presents evidence of prejudice resulting from the delay which violates a defendant's right to procedural due process." *People v Patton*, 285 Mich App 229, 236; 775 NW2d 610 (2009) (quotation marks and citation omitted). A defendant must demonstrate "actual and substantial prejudice to his right to a fair trial." *People v Musser*, 259 Mich App 215, 219-220; 673 NW2d 800 (2004). Substantial prejudice is an interference with the defendant's opportunity to defend against the charges to the extent that it likely affected the outcome of the trial. *Patton*, 285 Mich App at 237.

In this case, defendant argues that the delay in charging him resulted in his memory fading, making it more difficult for him to recall who might have been able to testify on his behalf. Prejudice, however, is not established by general or speculative assertions, and "a defendant cannot merely speculate generally that any delay resulted in lost memories, witnesses, and evidence." *Woolfolk*, 304 Mich App at 454. Here, defendant does not specify what evidence was lost during the 11 months between the incident and his arrest, and only asserts a general claim of memory loss due to the passage of time. Because such speculative assertions are insufficient to establish an interference with the defendant's opportunity to defend against the charges to the extent that it likely affected the outcome of the trial, we conclude that the record does not demonstrate plain error affecting defendant's substantial rights.

## B. INEFFECTIVE ASSISTANCE

Defendant next contends that defense counsel at trial was ineffective because she failed to move to dismiss the charges based on the prearrest delay, and also because she advised defendant not to testify. We disagree.

We note that this issue also is unpreserved as it was neither raised before nor decided by the trial court.[1] Our review of unpreserved claims of ineffective assistance of counsel is limited to review for errors apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions, US Const, Am VI; Const 1963 art 1, § 20. The right to counsel encompasses the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). To establish a claim of ineffective assistance of counsel, a defendant must show "(1)

---

[1] In fact, in response to the trial court's question at sentencing, defendant stated that he was satisfied with defense counsel's representation of him.

that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). A counsel's performance is deficient if it fell below an objective standard of professional reasonableness. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The performance will be deemed to have prejudiced the defense if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Randolph*, 502 Mich at 9, quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). The effective assistance of counsel is presumed, and the defendant bears the heavy burden of proving otherwise. *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

Defendant argues that the performance of his trial counsel was deficient because she failed to move to dismiss the charges based upon the prearrest delay. As discussed, however, there is no evidence that the 11-month delay before defendant's arrest interfered with defendant's opportunity to defend against the charges to the extent that it likely affected the outcome of the trial. See *Patton*, 285 Mich App at 237. Because counsel was not obligated to advance a meritless argument or raise a futile objection, her failure to do so does not constitute ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant also argues that the performance of his trial counsel was deficient because she improperly advised him not to testify at trial. A defendant can neither be compelled to testify nor prohibited from testifying; accordingly, the decision to testify rests solely with the defendant. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). Here, in response to the trial court's inquiries, defendant stated on the record that he did not wish to testify, that he had spoken with his trial counsel regarding the decision, and that he understood the "ramifications, the effects, [and] the results" of the decision not to testify. There is no evidence that defendant's trial counsel failed to properly inform defendant of the repercussions regarding his decision not to testify, or that her advice was not sound at the time defendant made his decision.

When defense counsel advises a defendant regarding whether to testify, it is considered a matter of trial strategy. *People v Alderete*, 132 Mich App 351, 360; 347 NW2d 229 (1984). The failure to call a defendant as a witness is only considered to be ineffective assistance of counsel when it is proven to be prejudicial. See *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). The defendant has the burden of proving that the decision not to call the defendant as a witness was, in fact, prejudicial, *People v Shively*, 230 Mich App 626, 629; 584 NW2d 740 (1998), and the decision to not call the defendant as a witness is presumed to be sound trial strategy unless defendant presents evidence to overcome that presumption, *People v Tommolino*, 187 Mich App 14, 17; 466 NW2d 315 (1991).

In this case, defendant argues that his counsel's advice that he not testify was not a good strategy because the result of him testifying could have been no worse than the actual result, being conviction. In other words, defendant essentially argues that defense counsel's strategy did not work. However, at the time defendant decided not to testify, one could only speculate whether his testimony would be beneficial or detrimental, and in fact, it remains unknown whether defendant's testimony would have benefitted him in any way. See *People v Plummer*,

-4-

229 Mich App 293, 308; 581 NW2d 753 (1998). The fact that in hindsight a strategy was not successful does not mean that the strategy was unreasonable and does not render counsel's assistance ineffective. *People v Trakhtenberg*, 493 Mich 38, 64; 826 NW2d 136 (2012). Further, defendant's argument, if it were to prevail, would render every decision not to pursue a marginally reasonable defense strategy in favor of a competing reasonable strategy that later proved to be unsuccessful, ineffective assistance of counsel. This is not what the law dictates. Defendant has not satisfied his burden of demonstrating that his trial counsel's advice to not testify was unsound trial strategy that resulted in prejudice. We therefore find no error apparent on the record to support defendant's unpreserved claim of ineffective assistance of counsel.

## D. EXCITED UTTERANCE

Defendant next contends that the trial court erred by admitting the hearsay statement of the victim's mother recounting what the victim said to her. We disagree.

A trial court's decision on an evidentiary issue is reviewed for an abuse of discretion. *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Dixon-Bey*, 321 Mich App 490, 496; 909 NW2d 458 (2017).

"Hearsay is an unsworn, out-of-court statement that is offered to establish the truth of the matter asserted." *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007). Hearsay is generally inadmissible, but may be admitted if it meets the requirements of one of the hearsay exceptions set forth in the Michigan Rules of Evidence. MRE 802; *Stamper*, 480 Mich at 3. One such exception is provided for the admissibility of an "excited utterance." MRE 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2) allows hearsay testimony "that would otherwise be excluded because it is perceived that a person who is still under the sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication so that any utterance will be spontaneous and trustworthy." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998) (quotation marks and citation omitted).

For a statement to be an excited utterance, (1) there must be a startling event, and (2) the resulting statement must be made while under the excitement caused by the event. *Id*. Our Supreme Court has also stated that an excited utterance (1) must arise out of a startling occasion; (2) must be made before there has been time to contrive and misrepresent, and (3) must relate to the circumstances of the startling occasion. *People v Gee*, 406 Mich 279, 282; 278 NW2d 304 (1979). The requirement that the statement " 'be made before there has been time to contrive and misrepresent' is simply a reformulation of the inquiry as to whether the statement was made when the witness was still under the influence of an overwhelming emotional condition." *People v Straight*, 430 Mich 418, 425; 424 NW2d 257 (1988). Many factors may prolong the period of excitement precluding conscious reflection, such as shock, unconsciousness or pain, the nature of the startling event, the character of the statement, the condition of the declarant, the identity of the declarant, and the availability of other evidence. *Id*. "It is the lack of capacity to fabricate, not the lack of time to fabricate, that is the focus of the excited utterance rule." *Smith*, 456 Mich

at 551. "The question is not strictly one of time, but of the possibility for conscious reflection." *Id*.

In this case, the victim's mother testified that when she arrived at the uncle's home on the day in question, she noticed that the victim appeared upset, and so she repeatedly asked the victim to explain what was wrong. After about 20 minutes, the victim, crying, told her mother about the assault. At trial, the prosecutor asked the victim's mother to repeat what the victim had said to her. Over defense counsel's objection, the trial court permitted the testimony, determining that although the statements from the victim to her mother were hearsay, they were admissible because they were "excited utterances." On appeal, defendant does not contest that the victim's statement to her mother describing the sexual abuse arose from the startling event of defendant's behavior or that the statement related to the circumstances of the startling occasion of defendant's sexual behavior. Rather, defendant argues that the victim made the statement long enough after the event that she had the capacity to contrive a statement.

A review of the record, however, indicates that even though approximately two hours had elapsed after the sexual assault before the victim told her mother, the victim continued to be under the emotional influence of the event to the extent that she was unable to consciously reflect about the attack. At the time of the incident, the victim was 14 years old. Her mother testified that the victim was visibly upset and hiding behind other family members. When her mother pressed her for an explanation, the victim tearfully disclosed the assault. Thus, it was in the range of reasonable possibilities to determine that the victim remained under the influence of the emotions from the incident to the extent that she did not contrive a version of events. We therefore conclude that the trial court did not abuse its discretion in finding that the statement was an "excited utterance."

## D. VOUCHING FOR WITNESSES

Defendant next contends that he was denied a fair trial because the prosecutor impermissibly vouched for the credibility of prosecution witnesses, and because the prosecutor elicited vouching testimony from the victim's mother. Defendant also argues that his trial counsel provided ineffective assistance by failing to object to the prosecutor's vouching statements. We disagree.

Defendant preserved his challenge to the statement elicited by the prosecutor from the victim's mother by objecting at trial. We therefore review this allegation of prosecutorial misconduct de novo to determine whether defendant was denied a fair and impartial trial. *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). Defendant failed to preserve the remaining issues by failing to object or otherwise raise these issues before the trial court. We review unpreserved claims of prosecutorial misconduct for plain error affecting substantial rights. *People v Norfleet*, 317 Mich App 649, 660 n 5; 897 NW2d 195 (2016). Similarly, we review an unpreserved claim of ineffective assistance of counsel for errors apparent on the record. *Heft*, 299 Mich App at 80.

A prosecutor may not "vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). Such commentary could influence the jury to decide the case based

-6-

on the prosecutor's special knowledge and not on the evidence presented. *People v Bennett*, 290 Mich App 465, 477; 802 NW2d 627 (2010). Further, the prosecutor may not vouch for a witness's credibility based on the prosecutor's integrity or the prestige of the position. See *People v McGhee*, 268 Mich App 600, 633; 709 NW2d 595 (2006).

However, prosecutors have great latitude regarding their closing arguments and are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Bahoda*, 448 Mich at 282. "[A] prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). Further, prosecutorial comments must be evaluated in context, including the arguments of the defense and the relationship they bear to the evidence. *Id*. at 454.

In this case, defendant argues that two of the prosecutor's remarks during closing argument were impermissible vouching. The prosecutor argued: "[The victim] honestly answered every question that was posed to her. She told you the truth as to what happened on that day;" and "There is no reason for these three people to have come in here and lie to you. They testified to you truthfully as to what happened on September 5, 2015." The prosecutor made these comments after discussing the trial court's instructions regarding how to evaluate the credibility of witnesses. The prosecutor encouraged the jury to follow the trial court's instructions to determine credibility. The prosecutor did not reference the prestige of the office or his personal knowledge in discussing the veracity of his witnesses' testimony. We conclude that the prosecutor's comments during closing argument regarding the credibility of the witnesses did not constitute impermissible vouching, and defendant therefore has failed to demonstrate plain error.

We similarly conclude that the prosecutor did not engage in misconduct by eliciting testimony from the victim's mother regarding the victim's statements to her. At trial, the prosecutor questioned the victim's mother about what the victim told her shortly after the incident. Defense counsel at trial objected, arguing that the testimony was inadmissible hearsay, but also arguing that such testimony would constitute the victim's mother vouching for the victim by confirming the victim's testimony.

Questions that ask a witness to comment or provide an opinion on the credibility of another witness are improper because "matters of credibility are to be determined by the trier of fact." *People v Buckey*, 424 Mich 1, 16-17; 378 NW2d 432 (1985) (quotation marks and citations omitted). In this case, however, the prosecutor did not ask the victim's mother to comment on the victim's credibility. Rather, the prosecutor asked the victim's mother what the victim told her on the morning in question, and the trial court permitted the victim's mother to answer the question, determining that although the victim's statement as told to the mother was hearsay, it was admissible as an excited utterance. The victim's mother did not express an opinion as to the credibility of the victim, nor was she asked to. Any bolstering of the victim's testimony that may have occurred by virtue of the victim's mother confirming that the victim told the same story to her that the victim later told on the witness stand, was inadvertent. "Prosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People v Noble*, 238 Mich App 647, 661; 608 NW2d 123 (2000). Here, the trial court found the

evidence admissible as an "excited utterance." It is "not misconduct on the part of the prosecutor to introduce evidence expressly permitted by the trial judge." *People v Curry*, 175 Mich App 33, 44; 437 NW2d 310 (1989).

We further reject defendant's argument that defense counsel was ineffective because she failed to object to the prosecutor's alleged misconduct. As noted, defense counsel did, in fact, object to the testimony of the victim's mother. Further, because we conclude that the prosecutor did not impermissibly vouch for the witnesses, and because counsel was not obligated to advance a meritless argument or raise a futile objection, her failure to do so does not constitute ineffective assistance of counsel. *Ericksen*, 288 Mich App at 201.

### E. JUROR CHALLENGES

Defendant next contends that the trial court abused its discretion by denying defendant's request to dismiss Juror Lutz for cause. Defendant also contends that defense counsel was ineffective by failing to challenge Juror Wascher for cause. We disagree.

We note that defendant challenged Juror Lutz before the trial court, and the trial court denied that challenge; this issue is therefore preserved for our review. We review a trial court's ruling on a challenge for cause for an abuse of discretion, and defer to "the trial court's superior ability to assess from a [juror's] demeanor whether the person would be impartial." *People v Williams*, 241 Mich App 519, 521-522; 616 NW2d 710 (2000). We will not reverse a trial court's denial of a challenge to a juror for cause unless there is "some clear and independent showing on the record that (1) the court improperly denied a challenge for cause, (2) the aggrieved party exhausted all peremptory challenges, (3) the party demonstrated the desire to excuse another subsequently summoned juror, and (4) the juror whom the party wished later to excuse was objectionable." *People v Legrone*, 205 Mich App 77, 81; 517 NW2d 270 (1994) (quotation marks and citations omitted).

By contrast, defendant did not raise before the trial court the issue of whether defense counsel was ineffective for failing to challenge Juror Wascher for cause, and we therefore review that unpreserved claim of ineffective assistance of counsel for error apparent on the record. *Heft*, 299 Mich App at 80.

A defendant has a right to a fair and impartial jury with jurors who only deliberate about "the evidence that is presented to them in open court." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). Jurors are presumed to be competent and impartial, and the burden of proving that a juror is not impartial, or at least that the juror's impartiality is in reasonable doubt, is upon the party seeking to disqualify the prospective juror. *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008).

A party can challenge a prospective juror for cause on any basis stated in MCR 2.511(D), or for any reason recognized by law. MCR 6.412(D)(1). The decision to grant or deny a challenge for cause is within the discretion of the trial court. *Legrone*, 205 Mich App at 82. However, "once a party shows that the prospective juror falls within the parameters of one of the grounds enumerated in MCR 2.511(D), the trial court is without discretion to retain that juror,

who must be excused for cause." *People v Eccles*, 260 Mich App 379, 382-383; 677 NW2d 76 (2004).

Here, defendant argues that the trial court abused its discretion by denying his request to dismiss Juror Lutz for cause. During voir dire, the trial court asked whether any of the prospective jurors were police officers, had been police officers of any sort, or were close to a police officer. Juror Lutz explained that he had been admitted to the Michigan State Police trooper school and would be starting there soon, and that his brother-in-law was a state trooper. The trial court asked whether Lutz would give more credibility to a police officer witness, and Lutz responded, "No, sir. No issues." The trial court then instructed him to consider a police officer's credibility the same as any other witness. Lutz also affirmed that he did not think being charged with a crime meant that a person was guilty, and that he understood the presumption of innocence.

Prospective jurors who are police officers cannot be challenged for cause on the basis of their occupation. *People v Walker*, 162 Mich App 60, 64; 412 NW2d 244 (1987). Rather, a prospective juror, whether or not a police officer, may be challenged if he or she is biased as set forth in MCR 2.511(D). In this case, defendant does not explain which category of MCR 2.511(D) would have precluded Lutz from serving on the jury, only stating that he would have been excluded from the jury a few months later because he was going to be a police officer. Because Lutz's anticipated future occupation as a police officer alone was not sufficient to demonstrate cause to exclude him from the jury, the trial court did not abuse its discretion by denying defendant's challenge for cause.

Defendant also argues that Juror Wascher should have been challenged for cause because he demonstrated bias when he stated that he would hold it against defendant if he did not testify. MCR 2.511(D) permits a prospective juror to be excused for cause if the juror demonstrates a bias for or against a party, shows a state of mind that will prevent the juror from rendering a just verdict, or has opinions that would improperly influence the juror's verdict. *Williams*, 241 Mich App at 521.

During voir dire, defense counsel asked the prospective jurors if they would be bothered if defendant did not testify. Upon further questioning, Wascher explained that he would prefer to hear both sides of the story, but that he would not hold defendant's lack of testimony against him. The trial court then explained that defendant has a right to not testify which cannot be held against defendant, and asked whether Wascher could consider only the prosecution's evidence without any strikes against defendant for not testifying. Although the record is not entirely clear regarding Wascher's reply, it appears that he stated that he would not hold defendant's refusal to testify against him, and agreed with the trial court that he was not allowed to speculate about why defendant did not testify.

Jurors are presumed to be impartial until shown otherwise, and the burden is on the defendant to establish that a juror was not impartial or that a juror's impartiality is in reasonable doubt. *Miller*, 482 Mich at 550 (citation and quotation marks omitted). Defendant has framed this as an unpreserved claim of ineffective assistance, which we review for error apparent on the record. *Heft*, 299 Mich App at 80. Given that Wascher assured the trial court that he could be

fair and impartial, defense counsel's decision not to request that Wascher be excused for cause was not error.

## F. SENTENCING

Finally, defendant contends that the trial court's upward sentence departure was unreasonable. We conclude that the absence of an adequate record regarding the trial court's rationale for the extent of the departure and proportionality of the departure sentence imposed precludes our review. Accordingly, the case law requires us to remand for resentencing.[2] *Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017); *People v Steanhouse (On Remand)*, 322 Mich App 233, 239; 911 NW2d 253 (2017) (this Court must remand to the trial court for resentencing if the trial court fails to provide adequate reasons for the extent of the departure sentence imposed).

We review a sentence that departs from the applicable guidelines range for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). In reviewing the sentence for reasonableness, we apply the abuse of discretion standard of review. *Steanhouse*, 500 Mich at 471. The relevant inquiry when reviewing a sentence for reasonableness is "whether the trial court abused its discretion by violating the principle of proportionality" test adopted in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). *Steanhouse*, 500 Mich at 471; *Dixon-Bey*, 321 Mich App at 520. Under the principle of proportionality, " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Steanhouse*, 500 Mich at 472, quoting *Milbourn*, 435 Mich at 661. "Resentencing will be required when a sentence is determined to be unreasonable." *Lockridge*, 498 Mich at 392.

When imposing a sentence, a trial court is required to consult the sentencing guidelines, calculate the recommended sentencing guidelines range, and take that range into account. MCR 6.425(D); *Lockridge*, 498 Mich at 391-392. But although a trial court must score and consider the sentencing guidelines, the court is not compelled to impose a minimum sentence within the calculated range. *Id.* at 365. A sentencing court may depart from the sentencing guidelines range without stating a substantial and compelling reason to justify the departure; however, the sentence imposed must be reasonable. *Id.* at 392. In addition, the sentencing court must state its reasons for the sentence imposed sufficient to enable appellate review. *Id.* "[R]elevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines, and (3) factors considered by the guidelines but given inadequate weight." *Dixon-Bey*, 321 Mich App at 525 (citations omitted).

In this case, the trial court sentenced defendant to a minimum sentence of 18 months in prison when the guideline minimum range was 0 to 11 months. The trial court stated at sentencing:

---

[2] We note that the trial court is not precluded from imposing the same sentence on remand, but must provide adequate reasons for doing so.

-10-

Mr. Bryant, I saw the trial and I saw a young lady who was somewhat younger when this occurred. There is no question in my mind that what she said happened, happened, and what she said happened was she was sleeping on her couch, or the couch of the people that she was staying with, and there was a wedding going on that weekend, and all the men left to go to the barbershop, except for you . . . – which left you alone with her and her younger sister who was asleep on the floor. You then in a, and what I think is a predatory animalistic fashion, went over to this 14 year old girl and molested her. At one point you moved the sister to a different area, I'm sure, with the intention of taking the matter further, and then somebody came home.

This is intolerable to this court, it's intolerable to our society. It is a horrible, horrible offense.

We didn't get much history on whether this young lady has had psychological treatment but this would have a terrible scaring effect on her. And what's so frightening, Mr. Bryant, is it woulda gone further . . . – if not interrupted. You tried to continue it with her by text message.

I think this does deserve a term of incarceration. I don't think the guidelines adequately cover it. I'm gonna order that you serve a minimum of 18 months in prison with a maximum set by statute. . . .

Although the sentencing guidelines are advisory only, *Lockridge*, 498 Mich at 365, "the guidelines remain a highly relevant consideration in the trial court's exercise of sentencing discretion that the trial courts must consult and take . . . into account when sentencing." *Steanhouse*, 500 Mich at 474-475, quoting *Lockridge*, 498 Mich at 391 (quotation marks omitted). Here, the trial court departed significantly from the guidelines; the guidelines range for defendant's minimum sentence was calculated at zero to 11 months in jail, and the trial court's minimum sentence of 18 months in prison represents an increase of approximately 64% above the maximum calculated minimum of 11 months in jail. In departing from the guidelines, the trial court emphasized that the victim was 14 years old and that the crime was predatory and "horrible."

We agree with the trial court that the offense is a serious one, but disagree that the age of the victim, and the predatory nature and seriousness of the crime (victim between 13 to 15 years of age), were not given adequate weight by the calculation of the guidelines. The age of the victim and the comparative age of defendant were both elements of the offense, MCL 750.520e(1)(a). Moreover, in calculating the guidelines in this case, Offense Variable 10, exploitation of a vulnerable victim, was scored at 10 points because "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b). We reiterate that relevant to determining whether a departure sentence is proportionate is whether the reasons supporting the departure include consideration of factors already adequately considered in calculating the guidelines range. See *Dixon-Bey*, 321 Mich App at 525.

We therefore remand to the trial court for resentencing, including articulation of the reason for imposing any departure sentence and an explanation of how any departure sentence is proportionate to the seriousness of the circumstances surrounding the offense and offender. *Steanhouse (On Remand)*, 322 Mich App at 238-239.

We affirm defendant's conviction, but remand for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Kathleen Jansen
/s/ Michael F. Gadola